Joni GATES, Appellant,

v.

CITY OF TENAKEE SPRINGS,
Appellee.

No. S–3624.

Supreme Court of Alaska.

Dec. 6, 1991.

Rehearing Denied Jan. 10, 1992.

Joni Gates, pro se.

William T. Council, Council & Crosby, Juneau, for appellee.

Before RABINOWITZ, C.J., and BURKE, MATTHEWS, COMPTON and MOORE, JJ.

## OPINION

COMPTON, Justice.

Joni Gates sued the City of Tenakee Springs (hereinafter Tenakee Springs or city) as a result of the city's decision to move a fence Gates had put up in front of

her property.[1] The trial court granted summary judgment for the city, saying both that Gates failed to appeal an administrative decision to the superior court within thirty days as required by Alaska Appellate Rule 602(a)(2), and that the city had municipal immunity against Gates' claims under AS 09.65.070. Gates' appeal to this court raises further claims as well as challenging the judgment below. Gates also appeals the trial court's awards of costs and attorney's fees to Tenakee Springs.

## I. FACTUAL AND PROCEDURAL BACKGROUND

Joni Gates owns a block of land adjoining Tenakee Avenue in Tenakee Springs. In 1979, Gates requested and was granted a permit to build an "encroachment" consisting of a fence and gate in front of her property on Tenakee Avenue. A survey provided by the city indicates that the fence was, and still is, located on the city-owned right-of-way. Gates, however, claimed in the trial court that the fence had always been on her property.

Tenakee Springs Ordinance 78–8, substantially reenacted in Tenakee Springs Ordinance 81–2, governs the issuance of encroachment permits. It allows the city to order the change, relocation, or removal of any prior authorized encroachment if required in connection with the construction or maintenance of a street, road, or trail.

In November 1984 a major storm damaged much of the city. On December 14, the Tenakee Springs City Council voted to have "right-of-way encroachments removed within 7 days that would imped [sic] with construction and/or maintenance of roads and trails." Gates was notified by mail that her encroachment would have to be moved because it interfered with repair of Tenakee Avenue. Gates spoke out and organized a petition against the council's action. Her petition was considered twice and rejected by the Tenakee Springs City Council. In view of Gates' refusal to move the fence and gate herself, on January 11, 1985, the city moved Gates' fence. Gates claims that this resulted in the destruction of various items of real and personal property. At least ten other encroachments were also moved during repair of the road, according to the city.

Gates filed suit against the city on February 28, 1987, claiming that the city violated her right to equal protection of law by singling out her encroachment for removal. She also alleged that the city destroyed her real and personal property, destroyed an archaeological site in violation of the Federal Antiquities Act, unlawfully widened the Tenakee Trail, and violated her right to due process of law in making the decision to remove her fence.

Shortly thereafter Gates moved for summary judgment, alleging violations of ten Alaska Statutes, seven Tenakee Springs Ordinances, the Federal Antiquities Act, and her right to equal protection of law. The city cross-moved for summary judgment, arguing that there was no factual basis for Gates' claims. The city also argued that its decision to move the fence was administrative, and since it was made in December 1984 and Gates' complaint was not filed until February of 1987, the suit was barred under Appellate Rule 602(a)(2).[2] Further, the city argued that any claims Gates had for damages were barred by AS 09.65.070.[3]

---

1. Gates' claims included: destruction of real and personal property; destruction of a federally protected archaeological site; violation of equal protection and due process of law; and violation of various local ordinances and state statutes.

2. Alaska R.App.P. 602(a)(2) provides in part: An appeal may be taken to the superior court from an administrative agency within 30 days from the date that the decision appealed from is mailed or otherwise distributed to the appellant.

3. AS 09.65.070 provides in part:

(d) No action for damages may be brought against a municipality or any of its agents, officers, or employees if the claim ...

(2) is based upon the exercise or performance or the failure to exercise or perform a discretionary function or duty by a municipality or its agents, officers, or employees, whether or not the discretion involved is abused;

(3) is based upon the grant, issuance, refusal, suspension, delay or denial of a license,

The superior court denied Gates' motion and granted the city's motion for summary judgment on both grounds. The court awarded the city costs, including costs for the survey of Gates' property, and attorney's fees. Gates appeals the court's judgment, as well as the awards of costs and attorney's fees.

## II. APPELLATE RULE 602(a)(2) DOES NOT BAR GATES' CLAIMS AS UNTIMELY

The city argues, and the superior court agreed, that the Tenakee Springs City Council was functioning as an administrative agency when it decided to order removal of Gates' encroachment. Thus, under Appellate Rule 602(a)(2), Gates only had thirty days to appeal the council's decision to the superior court. It is undisputed that Gates' complaint was untimely if Rule 602(a)(2) applies. Gates argues, however, that the city council is a legislative body, not an administrative agency, and thus her complaint was not an administrative appeal. For the following reasons, we need not resolve this dispute.

■ First, to the extent that Gates' claims stem from the act of moving the fence, those claims were never considered by the "agency." Assuming for the sake of argument that the city council was acting as an administrative agency, its involvement with this case nevertheless ended before Gates' fence was moved. Gates never brought any of her claims for damages or statutory claims before the city council, nor was she required to do so. It is therefore incorrect to characterize her complaint to the superior court as an administrative appeal; there was no administrative decision to appeal. Thus, summary judgment under Rule 602(a)(2) was inappropriate on Gates' claims for damages, her archaeological site claims, and her statutory claims.

Several of Gates' claims were properly before the "agency." All of her claims which stem from the city council's decision to move the fence, rather than the city's act of moving the fence, fall into this cate-

gory. This includes the claim that her encroachment was singled out for removal in violation of her right to equal protection of law, a claim which was arguably raised before the city council during an open hearing. Again, however, we need not address the issue of whether the city council was acting as an administrative agency in making its decision. We conclude that each of Gates' claims which stem from the city's decision to move the fence fails on the merits.

## III. GATES' CLAIMS FOR DAMAGES

The superior court granted summary judgment for the city on Gates' claims for damages on the theory of municipal immunity under AS 09.65.070(d)(2) and (3). The city defends this conclusion, saying that both its decision to relocate Gates' fence and any consequences from that decision are immunized from damage claims, even if the decision or the consequences resulted from bad faith. Gates argues there is no municipal immunity in Alaska. Further, she points out that AS 09.65.070(d) does not bar suits for declaratory relief, and argues that hers is such a claim (concerning destruction of an archaeological site).

■ There is no merit to Gates' argument that immunity should not apply because her claim is for declaratory relief. Had she sued for declaratory or injunctive relief to challenge the city action before the fence was moved, that suit would not have been barred by municipal immunity. A suit for damages caused by a municipal decision, however, falls within the provisions of AS 09.65.070(d)(3). Furthermore, Gates is wrong when she says there is no municipal immunity in Alaska. The cases she cites for that proposition, *City of Fairbanks v. Schaible*, 375 P.2d 201 (Alaska 1962), and *Scheele v. City of Anchorage*, 385 P.2d 582 (Alaska 1963), were decided prior to the addition of sections (d)(2) and (d)(3) to AS 09.65.070. The only question is whether those sections are properly applied to this factual situation.

permit, appeal, approval, exception, variance,

or other entitlement, or a rezoning.

We discussed AS 09.65.070(d)(3) in *J & L Diversified Enterprises v. Municipality of Anchorage*, 736 P.2d 349 (Alaska 1987). We held that the purpose of the statute is to relieve municipalities from the threat of suits for damages resulting from licensing, permitting, and zoning decisions. Of course, "a party threatened with damage from such procedures may sue for injunctive or declaratory relief" against the decision, thus protecting "the individual's right to relief from a wrongful decision ... and preventing the possibility that the threat of a lawsuit may influence a municipal decision." *Id.* at 352. Such was not the nature of Gates' suit. We conclude that the city's decision to revoke Gates' permit is immunized under the plain language of AS 09.65.-070(d)(3). Thus, summary judgment as to any damage claims resulting from the city's *decision to move the fence* is affirmed.

■ The city also argues that it is similarly immunized against a suit for any damages resulting from the act of moving the fence, regardless of whether it was performed negligently. The city recognizes the distinction we have drawn between "planning" and "operational" decisions in evaluating the exercise of discretion in the sovereign immunity context, and specifically under AS 09.65.070(d)(2). *See Urethane Specialties v. City of Valdez*, 620 P.2d 683, 687–89 (Alaska 1980). It argues, however, that in this case, its "planning" decision to relocate the fence and its "operational" decision as to how to do so are indistinguishable. This argument is not persuasive. No evidence suggests that there is only one way to remove a fence. A decision to order its removal is

not equivalent to a decision regarding the removal method employed. While the city's discretionary policy decision to have Gates' fence removed is immunized, any decisions as to how that fence was to be removed are operational, and not protected. If the fence was removed negligently, for example, AS 09.65.070(d)(2) would not immunize the city against a suit for damages caused by that negligence.[4]

■ Gates is not entitled to any damage to the real property where the fence stood or stands, however, regardless of whether the city performed its work negligently. That is because the fence always stood and still stands on the right-of-way owned by Tenakee Springs. Despite Gates' protests as to the legitimacy of the survey, there is no genuine issue of material fact on the question of her property boundaries. The only evidence to contradict the findings of the licensed surveyor is Gates' bare assertion that the fence was on her property. Leaving aside the question of whether this is an issue on which a lay opinion would be sufficient to controvert an expert survey, we affirm the superior court's finding of no issue of material fact because Gates' assertion of ownership was abandoned on appeal.

There is, however, a material issue of fact as to how much damage to Gates' property was caused by the method by which the city decided to remove Gates' encroachment. Gates alleges the following seven items of damage to her property: (1) damage to plants, including a rose bush hedge; (2) blockage of entry to her property from Tenakee Avenue; (3) spillage of fuel oil on her property; (4) destruction of

---

**4.** The following quote from *Urethane* is instructive:

> We agree ... that the decision by the city manager to issue the questioned warning was an exercise of a discretionary function. However, the fact that issuance of the warning was a discretionary function does not automatically extend discretionary immunity to the city in regard to the warning's content.

620 P.2d at 688. The *Urethane* court also cited *State v. Abbott*, 498 P.2d 712 (Alaska 1972), applying the discretionary function exception to the waiver of state sovereign immunity, in which the court said:

> Once the basic decision to maintain the highway in a safe condition ... throughout the winter, ... is reached, the state should not be given discretion to do so negligently. The decisions at issue in this case simply do not rise to the level of governmental policy decisions calling for judicial restraint. Under these circumstances the discretionary function exception has no proper application.

*Urethane*, 620 P.2d at 688 (citing *Abbott*, 498 P.2d at 722). Similarly, decisions made by Tenakee Springs as to the method used to remove Gates' fence are not governmental policy decisions calling for judicial restraint.

a culvert, walkway, and retaining wall; (5) contamination of her property as a result of the placement of a creosote stringer at her gate; (6) removal of her soil, cement, and shovel; and (7) damage to the fence and fence posts. We must therefore remand the case to determine whether any of these alleged damages were the result of *negligent* removal of Gates' encroachment.[5]

■ The city had argued for summary judgment on Gates' damage claims regardless of municipal immunity because she did not mitigate her damages. It is the "universal rule that a wronged party must use reasonable efforts to avoid the consequences of injury done by another." *University of Alaska v. Chauvin*, 521 P.2d 1234, 1239 (Alaska 1974). A plaintiff's duty to make reasonable efforts to mitigate damages does not extend to subjecting oneself to undue risk and expense, however, and whether efforts were reasonable or potential risk and expense were undue are questions of fact for the trial court. *West v. Whitney–Fidalgo Seafoods*, 628 P.2d 10, 18 (Alaska 1981).

## IV. GATES' NON–DAMAGES CLAIMS FAIL ON THE MERITS

In addition to her claims for damages, Gates has raised many statutory and other claims against the city. The superior court granted summary judgment on some claims, dismissed others, and declined to consider still others because of its decision to grant summary judgment based on Appellate Rule 602(a)(2). Since we conclude that summary judgment on that basis was inappropriate, we must address Gates' remaining claims here. These claims present questions of law which we resolve based on the facts in the record.

■ Most of the claims raised by Gates before the superior court are addressed only cursorily or not addressed at all by Gates in her brief to this court.[6] We therefore treat these claims as having been abandoned.[7] *Lewis v. State*, 469 P.2d 689, 691–92 (Alaska 1970). Gates also raises several new matters before this court. These matters, whether new issues or new theories presented on appeal, will not be considered.[8] *Wickwire v. McFadden*, 633

5. In ordering this limited remand, we emphasize that Gates has no claims for damages for property that she cannot prove belonged to her, as is the case with the real property on which the fence stood. For example, if the fuel oil behind her fence spilled only on city property, she has no claim against the city for any damage from that spill. Gates will not have the opportunity to relitigate the issue of her property boundaries, or of who owns Tenakee Avenue, as we have affirmed the superior court's finding that Gates' fence *still encroaches* on city property by more than eight feet.

We also emphasize that Gates can only recover damages caused by the city's negligence in moving her property. "Negligence is the breach of a legal duty 'to conform to the legal standard of reasonable conduct in the light of the apparent risk.'" *Lundquist v. Department of Pub. Safety*, 674 P.2d 780, 782 (Alaska 1983) (quoting W. Prosser, *The Law of Torts*, at 324 (4th ed. 1971)).

6. This appeal was decided on the briefs submitted by the parties without oral argument. Oral argument was originally scheduled for June 26, 1991, but on June 12, Gates filed a motion to postpone oral argument so that she could take advantage of a commercial fishing opening. The court denied the motion, offering Gates the options of appearing at the scheduled time or agreeing to have the case decided on the briefs. Gates chose not to appear. Neverthe-

less, in an Opposition to the Request that the Appeal be Decided on the Briefs, Gates stated "[o]ral argument is important in this case because this case has numerous aspects and not all of them were addressed in the Supreme Court briefs." We note here that it would have been impermissible for Gates to address points at oral argument that were not addressed in her brief, so to the extent that this was her reason for wanting oral argument, oral argument would not have been necessary.

7. The following are the claims which are deemed waived for failure to argue on appeal: 1) Violation of or actions under AS 09.45.630; 09.55.280; 29.03.030; 29.20.010(a)(4); 29.25.010; 29.25.030; 29.25.050; 29.26.120; 29.26.150; 29.35.030; 29.40.030; 29.40.060; 29.40.070; 29.40.120; 29.40.130; 29.60.110; and 40.15.120; 2) Violation of or actions under Tenakee Springs Resolutions 76–7; 81–2, Section 00.00.040; 84–1; 84–10; 85–1; 85–10; 86–1, and Ordinance 1, Sections 3.4 and 4.3; 3) Claim that Tenakee Springs Ordinance 81–2 is unconstitutional; and 4) Claim that the city created a hazardous condition on the Tenakee Trail.

8. These claims are as follows: 1) Claim that the federal government, rather than Gates or the city, owns the land on which the fence stood; and

P.2d 278 (Alaska 1981). Finally, Gates raises several claims which are inappropriate in a complaint against the city of Tenakee Springs.[9] These claims, as well, will not be considered.

The remaining non-damage claims are as follows: (A) Gates was denied equal protection of law; (B) Gates was denied due process of law; (C) city officials violated conflict of interest statutes; (D) the city violated federal and state statutes by destroying an archaeological site; and (E) the city violated several Alaska statutes in its action against Gates' property. As stated earlier, the superior court granted summary judgment on each of these claims under Appellate Rule 602(a)(2). Though we find that rule inapplicable, we nevertheless conclude that each of these claims fails on its merits.

## A. *Equal Protection Claim*

 Gates argues that hers was the only encroachment targeted for removal by the Tenakee Springs City Council, and that hers was also the only one removed. She claims that it was discrimination, and not any necessity for road maintenance or any other legitimate reason, which motivated the city to revoke her encroachment permit. The city calls this claim frivolous, saying that at least seventeen property owners received encroachment removal notices, and at least ten encroachments were actually removed. The city argues that Gates did not make out a prima facie claim of denial of equal protection, and therefore it is entitled to judgment as a matter of law on this claim.

This claim was not addressed by the superior court. The superior court indicated, however, that there were material issues of fact which precluded summary judgment for either side. We disagree.

"Selective enforcement of a statute violates the equal protection clause only if it is part of a deliberate and intentional plan to discriminate based on an arbitrary or unjustifiable classification." *Barber v. Municipality of Anchorage*, 776 P.2d 1035, 1040 (Alaska 1989). The plaintiff "has the initial burden of producing evidence demonstrating discriminatory intent." *Id.; State v. Reefer King Co.*, 559 P.2d 56, 64–65 (Alaska 1976), *modified on reh'g*, 562 P.2d 702 (Alaska 1977). While there are disputed issues of material fact in the record about how many encroachments were moved, Gates presented no evidence which would demonstrate discriminatory intent on the part of the city. Rather, her evidence consisted of conclusory accusations of discrimination based on the number of encroachments removed. This is not a sufficient showing to make a prima facie case. The city is therefore entitled to summary judgment as a matter of law on this claim.

## B. *Due Process Claim*

Gates challenges the process by which the city decided to move her fence. She claims that she was given insufficient notice of the city's plans and that she was not afforded the opportunity to appeal. The city argues that Gates was given all the process she was due. The city says her property interest, if she had any, was minimal, and that even if the due process clause were implicated, she was given adequate notice, ample opportunity to be heard, and an opportunity to present objections to the city's decision. Furthermore, the city cites its own interests in the emergency situation as justification for less process, if any were due at all.

 For due process to be implicated, there must be a deprivation of a liberty

2) Claim of ownership of the property under the federal Townsite Act.

9. The following claims cannot rest against the city:
 1) Violation of AS 09.50.250 (claim of negligence by the State of Alaska);
 2) Claim under Federal Tort Claims Act (claim of negligence against the United States);

3) Violation of AS 41.35.100 (claim against the Alaska Department of Natural Resources);
4) Violation of AS 41.35.350 (claim against the Alaska Historical Commission); and
5) Claim against the U.S. Department of Transportation.

or property interest sufficient to warrant constitutional protection. *Hornaday v. Rowland*, 674 P.2d 1333, 1344 (Alaska 1983). Once such an interest is established, the procedural safeguards required are determined by a balancing of the private and public interests involved. *Keyes v. Humana Hosp. Alaska*, 750 P.2d 343, 353 (Alaska 1988).

■ Gates' encroachment permit under Tenakee Springs Ordinance 78–8 gave her the right to use the city's land on Tenakee Avenue only until such time as the city required the removal of the encroachment. It is questionable whether this afforded Gates a property right requiring constitutional protection. We need not resolve that issue, however, because we find that even if Gates was entitled to some process before removal of her encroachment, she received all the process she was due. It is undisputed that Gates received advance notice of the city's intent to order removal of her encroachment, and that Gates had a chance to appeal the city's decision. It is also undisputed that nearly a month elapsed between the city's initial decision and the removal of Gates' encroachment. We conclude on this record that Gates was given adequate notice and a reasonable opportunity to object to the city's decision. The city is therefore entitled to summary judgment as a matter of law on this claim as well.

## C. *Conflict of Interest Claims*

Gates argues that city officials violated AS 39.52.110, 39.52.120, and 39.52.150 by misusing city and state funds during the period in which her encroachment was removed. Neither the city nor the superior court addressed these allegations, but Gates continues to press them on appeal.

■ Alaska Statute 39.52.010–.960 is the Alaska Executive Branch Ethics Act.

It concerns ethical violations by employees of the state executive branch, including state agencies, boards and commissions. *See* AS 39.52.910. There is no allegation by Gates that the officials whose conduct she questions were acting in any state executive capacity. Rather, they were members of a municipal city council. Thus, the statutes do not provide Gates with a cause of action.

## D. *Archaeological Site Claims*

Gates argues that an archaeological site on her land was destroyed by the city, and that the city should have to pay a fine under the Federal Antiquities Act. She seeks a declaratory judgment that the city destroyed an archaeological site in violation of that act. Gates further argues that the city's destruction of this site without notifying the state Department of Natural Resources violated AS 41.35.070.[10] The city argues that the statutes which Gates cites, both federal and state, do not provide for any form of private civil enforcement. Rather, they are criminal statutes, or apply only to the Alaska Department of Natural Resources. The city further argues that it never found an archaeological site, so it had no duty to report anything.

■ The superior court found that the Federal Antiquities Act was "not applicable to this case" because it is only applicable to lands owned or controlled by the United States.[11] It therefore denied Gates' claims for a declaratory judgment and a fine against the city under that act. Since we affirm the superior court's finding that the city owns the land in question, we affirm this ruling. Gates' claim under AS 41.35.-070 also has no merit. As the city correctly points out, even if Gates did have standing to sue under this statute, and even if it does apply to construction performed by

---

10. AS 41.35.070 provides in part:
 (d) If in the course of performing public construction or improvements, historic, prehistoric or archeological sites, locations, remains, or objects are discovered, the department [of Natural Resources] shall be notified and its concurrence shall be requested in continuing the construction or improvement.

11. 16 U.S.C. § 433, provides in part:
 Any person who shall appropriate, excavate, injure, or destroy any historic or prehistoric ruin ... situated on lands owned or controlled by the Government of the United States ... shall, upon conviction, be fined in a sum of not more than $500.

municipalities, there is no evidence in the record which indicates that the city, during the course of its work, found any evidence of an archaeological site. Thus, the city is entitled to summary judgment as a matter of law on this claim.

### E. *Statutory Claims Regarding Gates' Property*

██ Gates argues that under AS 09.45.-235, her "agricultural operation" (various plants which she grew on the land behind her fence) was not a private nuisance, and thus the city's disruption of it was improper. Leaving aside Gates' claims for damages to her plants, Gates has no recourse under AS 09.45.235. As the city points out, that statute is designed to provide a defense against a nuisance action, not against a permit revocation under city ordinances. This claim is therefore without merit.

██ Gates also makes a claim under AS 46.09.020, alleging that the city spilled a "barrel of fuel oil" on her property. Assuming for the sake of argument that a spill occurred and that it affected Gates' property, the statute she cites provides her no relief. Alaska Statute 46.09.020 concerns spills of "hazardous substances," a term which is defined for the purpose of the statute in AS 46.09.900(4). Uncontaminated refined oil is not a hazardous substance under AS 46.09.020. Thus, Gates' claim under this statute also is without merit.

## V. COSTS AND ATTORNEY'S FEES

Gates contests the superior court's award of costs for the survey of her property made by the city's surveyor. She argues that the survey was biased, was not properly registered, and was done in such a manner so as to prevent any possibility of comparison with prior surveys, which she has alleged to be more accurate. Gates also contends that the city's cost bill was not presented within ten days of judgment, as required by Alaska Civil Rule 79(a). Gates does not present any argument for reversal of the superior court's attorney's fees award, although she does argue that if that award is upheld, she should be granted pro se attorney's fees for the appeal to this court. The city defends both awards as being within the discretion of the trial court, and as justified under the circumstances of the case.

██ Gates' claim for pro se attorney's fees for her appeal to this court must be denied, even if she could be deemed the prevailing party on appeal. Lay pro se litigants cannot recover attorney's fees. *Alaska Fed. Sav. & Loan v. Bernhardt,* 794 P.2d 579, 581–2 (Alaska 1990).

Because we remand Gates' damages claims for further consideration, we must also vacate and remand the superior court's awards of costs and attorney's fees. The superior court should reconsider these awards after the remaining issues are resolved to determine whether the city may be considered the prevailing party on the main issue or issues in the action. *Day v. Moore,* 771 P.2d 436, 437 (Alaska 1989). Since the issues have been briefed before us, however, we provide the following guidance to the superior court in the interest of judicial economy.

An award of costs, if consistent with legal principles adopted by this court, "is committed to the broad discretion of the trial court and will not be disturbed on appeal, absent a clear showing that the trial court's determination was arbitrary, capricious or manifestly unreasonable, or that it stemmed from an improper motive." *CTA Architects v. Active Erectors & Installers,* 781 P.2d 1364, 1365 (Alaska 1989). Costs may be awarded under Civil Rule 79(b) if they are "necessarily incurred." *Atlantic Richfield Co. v. State,* 723 P.2d 1249, 1253 (Alaska 1986).

██ The parties fully briefed the issue of the cost of the survey, and the superior court reviewed the clerk's decision to tax costs and the arguments of both sides before affirming the award. Though the superior court did not specifically find that the survey costs were necessarily incurred, a proper award of costs will not be disturbed on appeal, regardless of the reasoning employed below. *Davis v. Hallett,* 587 P.2d 1170, 1171 (Alaska 1978). Since the

issue of Gates' property boundary was crucial to the litigation, the survey was a necessary expense to the city. The award was therefore not an abuse of discretion.

■ Gates' procedural argument is without merit. Whether the city's cost bill was presented prior to the entry of judgment, as Gates argues, both parties had ample opportunity to argue the merits of the cost bill before the trial judge. It would be "senseless formalism" to hold the cost bill was untimely. *Fairbanks North Star Borough v. Tundra Tours*, 719 P.2d 1020, 1039 (Alaska 1986).

Alaska Civil Rule 82(a)(1) gives the trial court discretion to award attorney's fees "in a reasonable amount" to a prevailing party in a case where there is no monetary recovery. The trial court's exercise of that discretion will not be overturned unless abused. *Thorstenson v. ARCO Alaska*, 780 P.2d 371, 376 (Alaska 1989). "An award constitutes an abuse of discretion only when it is manifestly unreasonable." *Id.* Awards as high as eighty-six percent of total fees are not necessarily "manifest-ly unreasonable." *Hausam v. Wodrich*, 574 P.2d 805, 811 (Alaska 1978). In this case, there were numerous claims which required research and response by the city. The superior court nevertheless awarded only eighty percent of the fees claimed by the city. This award was not manifestly unreasonable.

## VI. CONCLUSION

The superior court's award of summary judgment to Tenakee Springs is AFFIRMED in part, REVERSED in part, and REMANDED for further proceedings consistent with this opinion. The superior court's award of costs and attorney's fees is VACATED and REMANDED for further proceedings also consistent with this opinion.