860 P.2d 1205 (1993)
Phillip Paul WEIDNER, In his Own Right and Behalf and On Behalf of All Persons Similarly Situated, Appellant,
v.
STATE of Alaska, DEPARTMENT OF TRANSPORTATION AND PUBLIC FACILITIES, Appellee.
No. S-4813.
Supreme Court of Alaska.
October 8, 1993.
Rehearing Denied October 29, 1993.
*1207 Phillip Paul Weidner, Weidner and Associates, Anchorage, for appellant.
Rhonda F. Butterfield, Asst. Atty. Gen., Anchorage and Charles E. Cole, Atty. Gen., Juneau, for appellee.
Before MOORE, C.J., and RABINOWITZ, BURKE, MATTHEWS and COMPTON, JJ.

OPINION
MATTHEWS, Justice.
This case involves a public road built in 1952 and reconstructed in 1968. A portion of the road traverses privately-owned property. The State admittedly has a valid easement for the road as originally built. The private landowner claims, however, that in reconstructing the road in 1968 the State changed the course of the road and thereby took an additional easement over the altered path of the roadway. The State denies that the path of the road ever changed. Alternatively, the State argues that even if such a change occurred, the landowner's suit for inverse condemnation is barred by the applicable statute of limitations.

I

A
In 1952, the Jackalof Bay/Red Mountain Road (Bay Road) was constructed by the Alaska Road Commission. When Alaska became a state the road was transferred to the State under section 21(a) of the Alaska Omnibus Act of 1959. 48 U.S.C. note prec. § 21. The Bay Road crosses a 20-acre parcel of land formerly owned by Red and Nelda Calhoun who entered it in 1949.
Currently, Bay Road runs north-south over the Calhoun property, curving to the right at the north end thereby taking the path of an inverted "j." At the north end of the property, an unmaintained road splits off from and later reconnects with Bay Road. The parties refer to this road as the "Old Road." The Old Road makes a loop north of Bay Road and reaches a 40-acre parcel, Government Lot 2 (Lot 2), abutting the Calhoun property to the north. Weidner has had an ownership interest in Lot 2 since 1975 and owned the entire tract *1208 by 1983. The Old Road provides the only means of access from Bay Road to Lot 2.[1]
In 1968, the State reconstructed parts of Bay Road, including the portion that crosses the Calhoun property. In 1981, the Calhouns sought to develop this property. At that time, the Calhouns had not been on the land since 1962 and were unaware of any intervening changes. In preparing for development, their son-in-law, a registered land surveyor, allegedly found that in reconstructing Bay Road the State had moved the curve some 50 yards south of the original roadway. Based on this information, Weidner now claims that Bay Road originally followed the course of the Old Road and that during the 1968 reconstruction the State abandoned the Old Road and moved the northern loop of Bay Road south to its current location. For purposes of this opinion, the northern loop of Bay Road as currently located is referred to as the "New Route."
The Calhoun's son-in-law wrote the State concerning the status of Bay Road. James Sandberg, the State's Chief Right-of-Way Agent in the Department of Transportation, responded in a letter dated July 2, 1982, addressed to the Calhouns. Sandberg stated:
In regard to compensation for any new right-of-way taken in the 1968 construction by the State, the State at this time is not liable for payment for these lands being the time for notifying the State of its oversight and demanding compensation for the taking has past the "Statute of Limitations" for such action.
Sandberg also referred to a portion of Old Road as follows:
As to the recent use by others of any portion of this old abandoned road, we feel that this would constitute trespass against the property owner.
The letter takes no position as to whether the Old Road was (1) a portion of the original Bay Road allegedly abandoned in 1968; or (2) a road wholly separate from and coexistent with the original Bay Road. Based on Sandberg's letter, the Calhouns sought approval from the Kenai Borough Planning Commission of a development plan that would extinguish the Old Road access to Lot 2. The Commission approved the plan but made it subject to a staff recommendation requiring dedication of the Old Road as access to Lot 2.
Weidner maintains that after the Commission's approval of the Calhoun's plan he still faced the threat that the Calhouns would block the Old Road access to Lot 2. To prevent this occurrence, Weidner purchased the Calhoun property by a general warranty deed dated September 15, 1982.

B
By letter dated January 4, 1983, Weidner notified the State that he was the current owner of the property and that he considered the State's use of the New Route a trespass. He demanded that the State either cease using the New Route or compensate him for its use. In a letter dated January 28, 1983, the State wrote that
no major relocation [of Bay Road] occurred on your property; that to the extent any relocation occurred on your property, it occurred in 1968 or 1969, well past the expiration of any applicable statute of limitations; and that the State has a prescriptive easement to portions of relocation, if there are any on your land.
On September 10, 1984, Weidner filed this suit against the State for a number of claims relating to the alleged rerouting of Bay Road from the Old Road to the New Route. Principally, Weidner sued for either an injunction or compensation due to the State's (1) taking of an easement on the Calhoun's property for use of the New Route from his predecessor in interest, and (2) taking of Lot 2's right of access via the Old Road. Weidner and the State filed motions for summary judgment. Superior *1209 Court Judge Rene Gonzalez granted the State summary judgment on Weidner's claim for an injunction but denied other relief.
The case was subsequently transferred to Superior Court Judge Joan Katz. The State then filed a second motion for summary judgment on generally the same grounds as its earlier motion. Judge Katz granted the State's motion, concluding that the State had obtained a prescriptive easement for the New Route, which barred Weidner's suit for inverse condemnation. A final judgment was entered dismissing Weidner's complaint with prejudice and awarding the State sixty-five percent of its attorney's fees and costs ($16,720.97). Weidner appeals.

II
Judge Katz found that the State's actions in reconstructing Bay Road in 1968 and the passage of ten years created a prescriptive easement. Thus, Weidner's suit in 1984, sixteen years after the construction, was not timely. Weidner argues that the court erred in granting the State summary judgment because there is a question of fact as to whether any use by the State of the Calhoun's property was "permissive," that is by permission of the Calhouns. Further, Weidner argues that all uses by the State of private property should be conclusively presumed to be permissive unless the State gives the property owner notice "in writing and via either institution of condemnation proceedings or notice of taking that the State was claiming adverse title." Weidner also contends that allowing the State to take property by prescriptive easement violates the United States and Alaska constitutional provisions prohibiting private property from being taken without just compensation, and that application of the prescriptive easement doctrine violates a property owner's due process and equal protection rights. Weidner also challenges the superior court's award of costs and attorney's fee against him on the alternative grounds that he is a public interest litigant and that the award is excessive. We find that none of Weidner's claims has merit and affirm.

A. Permissive Use
We have held that a public way may be created by public use of private property for the ten-year prescriptive period. Dillingham Commercial Co. v. City of Dillingham, 705 P.2d 410, 416-17 (Alaska 1985).
To establish a prescriptive easement a party must prove that (1) the use of the easement was continuous and uninterrupted; (2) the user acted as if he or she were the owner and not merely one acting with the permission of the owner; and (3) the use was reasonably visible to the record owner.
McGill v. Wahl, 839 P.2d 393, 397 (Alaska 1992).
"There is a presumption that the use of land by an alleged easement holding was permissive." Id. The State can overcome the presumption of permissive use "by showing that such use of another's land was not only continuous and uninterrupted, but was openly adverse to the owner's interest, i.e., by proof of a distinct and positive assertion of a right hostile to the owner of the property." Hamerly v. Denton, 359 P.2d 121, 126 (Alaska 1961) (footnote omitted) (emphasis added). Thus, negating permissive use involves the concepts of openness and adversity. For the reasons that follow, we conclude that the State's use of the New Route was both open and adverse as a matter of law.
The openness requirement is an objective test: "actual notice is not required; the true owner is charged with knowing what a reasonably diligent owner would have known." Nome 2000 v. Fagerstrom, 799 P.2d 304, 309 n. 7 (Alaska 1990). The openness requirement, then, embodies the principle that a landowner is responsible for knowing the physical encumbrances *1210 on and the boundaries of the owner's land. This responsibility includes any changes in existing uses on the land. In the present case, the State need only show that its continued use of Bay Road over the New Route was open, and not that the change, if any, from the Old Road to the New Route was open and obvious to the private landowner. The State easily satisfies this requirement, as it cannot reasonably be disputed that maintenance of a public roadway constitutes an open use of real property.
The question remains whether this use was adverse. Dillingham and McGill speak to permissive use and the adversity requirement for a prescriptive easement. In Dillingham, the superior court granted summary judgment for the City of Dillingham on its claim for a prescriptive easement over a strip of private land that abutted a public alley. The public's use of the strip of land was both continuous and open. The basis of the prescriptive easement, however, consisted solely of this use by members of the public. There was no evidence that the city had ever maintained or otherwise exercised control over the strips of land abutting the alleyway. We reversed the summary judgment because an issue of fact existed by reason of the presumption of permissive use. Dillingham, 705 P.2d at 417. Since the owners of the servient estate may have allowed the public to use the land abutting the alley to facilitate public access to the owners' businesses, a remand was necessary to determine whether this public use was with the permission of the owners. Id.
In McGill, the McGills owned property that abutted land owned by the Wahls. For fourteen years, the Wahls used a roadway over the McGill's property as the sole access route to their property. We rejected the presumption of permissive use, stating that "a presumption does not arise where a roadway was not established by the owner of the servient estate for its own use but was for many years the only means of passage to the dominant estate." McGill, 839 P.2d at 397-98.
The distinction between Dillingham and McGill lies in the concepts of "permission" and "claim of right." Permission contemplates the servient landowner's right to revoke that permission and prevent further use of the servient owner's land. A claim of right, on the other hand, contemplates uninterrupted future use of the property. In Dillingham, the public's use of the land abutting the alleyway was consistent with the concept of permission. If the public merely used the land in order to gain access to the stores along the alleyway, such use did not contemplate unrestricted future access so much as permission to use the land as an incident to patronizing the stores. In McGill, on the other hand, the Wahls built and maintained a road across the McGills' land as the sole access to the Wahls' property. Since access is essential to the beneficial use of one's land, a road providing the sole access to a parcel likely contemplates continued use not subject to the permission of another. Thus, the maintenance of a sole access, without more, gives notice of a claim of right, rather than use subject to permission.
This case is closer to McGill. In 1968, the State reconstructed the Bay Road. If a deviation was made, the State surely claimed that new portion as part of the land it had a right to use. The dedication of State resources to the construction and maintenance of a public roadway is not the type of land use which one would subject to the permission of a servient landowner. In constructing a road, the government makes a commitment that contemplates continued, unrestricted use of the affected land. In other words, once the State determines a roadway is needed for public access to a certain region, the State surely does not intend such access to be contingent upon the permission of a private landowner. Unlike Dillingham, the interests of the private landowner and the public are not sufficiently aligned for the public's use to be presumptively permissive. Thus, construction and maintenance of a *1211 public roadway is a use that contemplates a claim of right rather than the owner's permission. For this reason, we hold that the State's construction and maintenance of Bay Road overcomes any presumption of permissive use. Town of Sparta v. Hamm, 97 N.C. App. 82, 387 S.E.2d 173, 176 (1990) (town "maintained, however poorly, and public used [the roadway] and so gave notice ... that there was a `claim of right' to the street, rising to the required level of `hostility.'"). Cf. Riddock v. City of Helena, 212 Mont. 390, 687 P.2d 1386, 1389-90 (1984) (city's visible construction of a water pipeline on private land was "sufficiently open and notorious to support [a] finding of a prescriptive easement").
Weidner's argument that the presumption of permissiveness cannot be overcome without formal notice from the State that the State is, in effect, engaged in an act of adverse possession, is unsupported by case authority. Formal notice that adverse possession is underway is not required in Alaska, nor, so far as we are aware, by the court of any other state.[2] Jon W. Bruce & James W. Ely, Jr., The Law of Easements and Licenses in Land § 5.04, at 5-19 (1988) ("The landowner need not have actual knowledge of adverse usage.").
We conclude, based on the above, that the superior court did not err in determining that the State's use of the New Route for more than ten years created a prescriptive easement.

B. Due Process
Due process under both the state[3] and federal constitutions has two general requirements: (1) notice; and (2) an opportunity to be heard. Matanuska Maid, Inc. v. State, 620 P.2d 182, 192-93 (Alaska 1980). A prescriptive easement satisfies both requirements. First, under the test for a prescriptive easement, the adverse use must be open and obvious such that a reasonable person would be aware of the use. See Nome 2000, 799 P.2d at 309 n. 7. We have explained that the purpose of the open and obvious possession requirement "is to afford the true owner an opportunity for notice." Id. (emphasis added). Second, the ten-year prescriptive period, during which a landowner may bring an inverse condemnation action, provides ample opportunity to be heard. Due process is not offended by the State's use of the prescriptive easement doctrine.

C. Equal Protection
Weidner also argues that the State's use of a prescriptive easement violates the state[4] and federal guarantees of equal protection. He asserts, without supporting argument or authority, that it is a violation of equal protection for the State to be able to obtain private property by prescription from a private individual, but not vice versa. See AS 38.95.010. This argument, however, misconceives the nature of equal protection. Equal protection ensures that the State will not treat an individual or group of individuals differently from all other individuals. Equal protection does not, however, require the State to treat all individuals the same as it treats itself. The Colorado Supreme Court, addressing the same equal protection challenge, explained the point as follows:
The ... argument really boils down to the question of whether the state is prohibited from enacting a forfeiture *1212 scheme applicable to private property without according private landowners an opportunity to exercise the same right of forfeiture against property held in the public domain. The answer, we submit, is that the state in its sovereign lawmaking capacity acts on behalf of all the people and, as such, is not constitutionally required to subject the people's rights to the very same forfeitures applicable to individual persons within its jurisdiction. We therefore reject the ... equal protection claim.
Board of County Comm'rs v. Flickinger, 687 P.2d 975, 982-83 (Colo. 1984) (citations omitted); cf. Pennsylvania v. New Jersey, 426 U.S. 660, 96 S.Ct. 2333, 49 L.Ed.2d 124 (1976) (per curiam) (a state is not a "person" within the meaning of the Equal Protection Clause). Thus, Weidner's equal protection claim is without merit.

D. Takings Clause
Weidner makes the further argument that a prescriptive easement allows the State to take private property without just compensation in violation of the takings clauses of the federal and Alaska constitutions.[5] This argument misunderstands the nature and operation of a prescriptive easement. The theory of prescriptive easement does not grant the State affirmative authority to take property without just compensation. Rather, the prescriptive period  as with any statute of limitations[6]  requires a private landowner to bring an inverse condemnation action for public use of private property within a specified period of time. At the expiration of the prescriptive period, the landowner's right to bring suit is extinguished, effectively vesting property rights in the adverse user.[7] In the present case, Weidner's claim for just compensation has been extinguished by expiration of the prescriptive period. Thus, as Weidner's predecessors had a right to just compensation for the State's unauthorized use of their land which they failed to assert in a timely manner, Weidner too is barred from bringing suit.

III
The superior court awarded the State sixty-five percent of its actual attorney's fees and costs ($16,720.97). Weidner challenges this award on two bases: (1) he is exempt from attorney's fees as a public interest litigant; or (2) the percentage of fees awarded is so high as to constitute an abuse of discretion.[8] Judge Katz rejected the public interest litigant argument in her order awarding attorney's fees, stating:
Mr. Weidner is not a public interest litigant. There is no indication that the public at large, or numerous people, would benefit from this litigation. Mr. Weidner had significant economic incentive of his own to bring this lawsuit.
As to the percentage of fees awarded, Judge Katz wrote that "[t]his percentage is justified in light of the number of issues *1213 raised by plaintiff, his resistance to discovery, and the quality of the state's work." Neither conclusion was in error.
First, as to Weidner's status as a public interest litigant, Judge Katz correctly concluded that Weidner had "sufficient private economic reasons to litigate." Sisters of Providence v. Department of Health and Social Services, 648 P.2d 970, 986 (Alaska 1982). This economic incentive coupled with the absence of others who would benefit from Weidner's suit, support the superior court's denial of public interest litigant status.
Second, as to the percentage of fees awarded, the amount was within the superior court's discretion. We have approved fee awards as high as eighty and eighty-six percent of actual fees. Gates v. City of Tenakee Springs, 822 P.2d 455, 464 (Alaska 1991) (eighty percent); Hausam v. Wodrich, 574 P.2d 805, 811 (Alaska 1978) (eighty-six percent). As in those cases, a higher percentage of actual fees was justified by the "numerous claims which required research and response by the" prevailing party. Gates, 822 P.2d at 464. Thus, we hold that the superior court's award of sixty-five percent of the State's actual attorney's fees was not an abuse of discretion.
The judgment of the superior court is AFFIRMED in all respects.[9]
*1214 
NOTES
[1] An appended map shows all of the physical features described in this opinion.
[2] Iowa, however, has enacted a statutory requirement of "express notice" for "any easement in real estate ... claimed by virtue of adverse possession." Iowa Code Ann. § 564.1 (West 1992).
[3] Alaska Const. art. I, § 7 ("No person shall be deprived of life, liberty, or property, without due process of law.").
[4] Alaska Const. art. I, § 3 ("No person is to be denied the enjoyment of any civil or political right because of race, color, creed, sex, or national origin.").
[5] Alaska Const. art. I, § 18 ("Private property shall not be taken or damaged for public use without just compensation.").
[6] For example, if the applicable statute of limitations bars a particular action for breach of contract, we do not conclude that the defendant had an absolute immunity to breach his contract with the plaintiff. Rather, the plaintiff simply failed to bring suit within the specified period of time and, therefore, may not assert an otherwise potentially meritorious claim.
[7] The various statutes limiting the bringing of actions to recover land from a wrongdoer in possession ... have resulted in barring the real owner's right to recover the property and the necessary result has been to extinguish his title. The law does not recognize a title which it will not protect. The result is that the title which the wrongful possessor has against all but the real owner is no longer subject to the former owner's right to recover it... . His title originating in his wrongful possession becomes absolute by the extinguishment of the former owner's title.

III American Law of Property § 15.2, at 760 (1952).
[8] We will not disturb an award of attorney's fees unless the award evidences an abuse of discretion by the trial court, i.e., the award is "manifestly unreasonable." Gates v. City of Tenakee Springs, 822 P.2d 455, 464 (Alaska 1991).
[9] Weidner argues other points in his brief including slander of title and negligent trespass. We do not address these points, however, because Weidner neither included them in his points on appeal nor gave them more than cursory treatment in his briefs. Alaska R.App.P. 210(e); see Braun v. Alaska Commercial Fishing & Agric. Bank, 816 P.2d 140, 144-45 (Alaska 1991).