Joe THORSTENSON, Appellant,

v.

ARCO ALASKA, INC., an Alaska
corporation, Appellee.

No. S–2555.

Supreme Court of Alaska.

Sept. 22, 1989.

Lee Holen, Johnson and Holen, Anchorage, for appellant.

Douglas S. Parker, Bogle & Gates, Anchorage, for appellee.

Before MATTHEWS, C.J., RABINOWITZ, BURKE, COMPTON and MOORE, JJ.

## OPINION

COMPTON, Justice.

When he was terminated by ARCO in 1986, Joe Thorstenson signed an agreement releasing ARCO from all claims arising from his termination. Later that year, he filed suit against ARCO for wrongful termination. He claimed that the release was voidable for duress, mistake, and misrepresentation. ARCO moved for summary judgment on the grounds: (1) that Thorstenson had ratified the release; and (2) that he had failed to tender back the benefits of the release agreement. The superior court granted ARCO's motion on both grounds. We reverse.

## I. FACTS AND PROCEEDINGS

Joe Thorstenson began working for ARCO in April 1976 as a heavy equipment mechanic at Prudhoe Bay, Alaska. On April 19, 1986, after ten years in ARCO's employ, Thorstenson was notified that he had been placed on "surplus status" for 60 days. He was told that if ARCO did not place him in another position by June 18, his employment would be terminated; as a surplus employee, he would continue to draw his regular salary for 60 days, but need not report to work. The "surplus employee notice" stated that Thorstenson's change in status was part of a reduction of ARCO's "overall staffing level" caused by its decision to consolidate its domestic oil and gas operations.

The written notice also informed Thorstenson of his eligibility for benefits under either ARCO's "special termination plan" or its "enhanced retirement program." The notice stated that in order to be eligible for payments under either plan, Thorstenson would be required to execute "the required release documents."

On April 23 Thorstenson received a "special termination plan package" from ARCO. On receipt of this package, Thorstenson was notified that he had 30 days in which to select either the "special termination plan" or the "enhanced retirement program."

On April 29 Thorstenson signed special termination plan documentation. The documentation included a release, which provided as follows:

Notice: Various State and Federal laws prohibit employment discrimination based on age, sex, race, color, national origin, religion, handicap or veteran sta-

tus. These laws are enforced through the Equal Employment Opportunity Commission (EEOC), Department of Labor and State Human Rights Agencies. If you feel that your election of the Atlantic Richfield Special Termination Plan was coerced and is discriminatory, you are encouraged to speak with your Employee–Relations representative or follow the steps described in the Employee Problem Resolution procedure. You may also want to discuss the following release language with your lawyer. In any event, you should thoroughly review and understand the effect of the release before acting on it. Therefore, please take this Release home and consider it for at least five (5) working days before you decide to sign it.

General Release:

In consideration for the Atlantic Richfield Special Termination Plan offered to me by the Company, I release and discharge the Company, its successors, subsidiaries, employees, officers and directors (hereinafter referred to as "the Company") from all claims, liabilities, demands and causes of action known or unknown, fixed or contingent, which I may have or claim to have against the Company as a result of this termination and do hereby covenant not to file a lawsuit to assert such claim. This includes but is not limited to claims arising under federal, state, or local laws prohibiting employment discrimination or claims growing out of any legal restrictions on the Company's right to terminate its employees. This release does not have any effect on any claim I may have against the Company unrelated to the termination.

Directly above Thorstenson's signature the following clause appeared:

I have carefully read and fully understand all of the provisions of this Separation Agreement and General Release which sets forth the entire agreement between me and the Company and I acknowledge that I have not relied upon any representation or statement, written or oral, not set forth in this document.

On June 18 ARCO terminated Thorstenson's employment. Following his termination, Thorstenson's medical and life insurance continued for one year. He received cash in exchange for his shares of ARCO stock and for accrued vacation time, and was provided free job placement services. On July 17 Thorstenson was paid a "special termination allowance" of $30,936.15 as part of his "special termination plan."

On December 18 Thorstenson and his co-plaintiff below, William Fagan, filed a complaint against ARCO for wrongful discharge. They alleged that the releases were obtained by duress and misrepresentation, were the result of a mistake, and were contrary to public policy.

ARCO answered, counterclaiming for damages resulting from plaintiffs' breaches of the settlement agreements.

In March 1987 Thorstenson moved to compel production by ARCO of documents connected to the reduction in force and the qualifications of employees not terminated. ARCO opposed this motion and moved for a protective order staying discovery pending the court's resolution of ARCO's anticipated motion for summary judgment.

ARCO then moved for summary judgment. Two days before the motion was argued, Fagan was dismissed from the action by stipulation; Fagan and ARCO agreed to bear their own costs and attorney fees. After hearing argument, the trial court granted the motion on both grounds urged by ARCO: (1) that Thorstenson had ratified the release and (2) that Thorstenson had not tendered back the "special termination" allowance. Thorstenson moved for reconsideration; his motion was denied. The court awarded ARCO $8,437.50 in attorney fees against Thorstenson.

The summary judgment order dismissing Thorstenson's claims did not entirely dispose of the lawsuit; ARCO's counterclaim against Thorstenson remained. In light of this, Thorstenson moved for certification under Alaska Civil Rule 54(b) on the ground that postponement of the appeal would cause unnecessary delay, expense,

and hardship, and on the ground that a determination by this court would materially advance the ultimate termination of the lawsuit. ARCO did not oppose the motion. Judgment was entered accordingly. Thorstenson appeals.

## II. DISCUSSION

In his complaint for wrongful discharge, Thorstenson asserted that because the release was obtained through duress and misrepresentation, and was based on mistake, it was voidable. He also asserted that because the release was contrary to public policy, it was unenforceable. ARCO replied that Thorstenson's conduct subsequent to the signing of the release constituted "ratification" of the release. ARCO also asserted that, as a prerequisite to obtaining rescission of the release, Thorstenson was required to "tender back" his special termination allowance; this he had not done.

On ARCO's motion for summary judgment, the trial court found that Thorstenson had (1) ratified the release, and (2) failed to tender back his special termination allowance. Thorstenson's motion for reconsideration was denied. Also denied was his motion to compel production.

■ When reviewing a grant of summary judgment this court must determine whether there exists a genuine issue of material fact and whether the moving party is entitled to judgment as a matter of law. *Zeman v. Lufthansa German Air Lines*, 699 P.2d 1274, 1280 (Alaska 1985). "[I]f the movant establishes *prima facie* that it is entitled to judgment as a matter of law, the party opposing summary judgment must demonstrate that there exists a genuine issue of material fact to be litigat-

ed." *Wassink v. Hawkins*, 763 P.2d 971, 973 (Alaska 1988) (citation omitted).

## A. RATIFICATION.

In Thorstenson's motion to compel production of documents connected to ARCO's reduction in force, he argued that he should be allowed to discover evidence that would help to establish that the release was void for misrepresentation.

ARCO opposed the motion to compel and moved for a protective order. Soon after, it moved for summary judgment. In its motion for summary judgment, ARCO argued that Thorstenson had ratified the release. It further argued that the existence and nature of any misrepresentations were irrelevant to the issue of ratification and that discovery of evidence on the issue of misrepresentation should be delayed pending resolution of the motion for summary judgment.

■ ARCO's argument reflects a misunderstanding of the law of ratification. "Ratification occurs when the releasor, with full knowledge of the facts entitling him to rescind, engages in unequivocal conduct giving rise to a reasonable inference that he intended the conduct to amount to ratification." *Wells v. Mix*, 266 Or. 188, 512 P.2d 788, 790 (1973). Stated somewhat differently, the power of a party to avoid a contract for mistake or misrepresentation is lost if, after he knows or has reason to know of the mistake or non-fraudulent misrepresentation, or knows of the fraudulent misrepresentation, "he manifests to the other party his intention to affirm it or acts with respect to anything he has received in a manner inconsistent with disaffirmance," or "he does not within a reasonable time manifest to the other party his intention to avoid it." Restatement (Second) of Contracts §§ 380(2), 381(2),[1] *quoted in Bering*

---

1. Restatement (Second) of Contracts § 380(2) provides:

   (2) The power of a party to avoid a contract for mistake or misrepresentation is lost if after he knowns or has reason to know of the mistake or of the misrepresentation if it is non-fraudulent or knows of the misrepresentation if it is fraudulent, he manifests to the other party his intention to affirm it or acts

   with respect to anything that he has received in a manner inconsistent with disaffirmance. Restatement (Second) of Contracts § 381(2) provides:

   (2) The power of a party to avoid a contract for misrepresentation or mistake is lost if after he knows of a fraudulent misrepresentation or knows or has reason to know of a non-fraudulent misrepresentation or mistake he does not within a reasonable time manifest

*Straits Native Corp. v. Birklid,* 739 P.2d 767, 768 (Alaska 1987); *see also Rickman v. Cone Mills Corp.,* 659 F.Supp. 412, 419–20 (D.Kan.1987) (no distinction between ordinary contracts and releases; "a party should not be able to accept the benefits of a settlement agreement, with full knowledge of all the facts, and yet deny his responsibility thereunder").

■ In order to prevail on its motion for summary judgment, ARCO must establish not only that Thorstenson acted in a manner inconsistent with disaffirmance, but in addition that at the time he so acted he was fully aware of the facts surrounding his termination. Summary judgment was inappropriate because Thorstenson's affidavit, submitted in conjunction with his motion for reconsideration, raises a genuine issue of material fact going to the issue as to whether or not Thorstenson was fully aware of the facts surrounding his termination at the time he allegedly ratified his termination. Therefore the trial court erred in granting ARCO's motion for summary judgment.[2]

## B. TENDER BACK.

Tender of the benefits received under an agreement is ordinarily a prerequisite to an action at law for rescission of the agreement. *Knaebel v. Heiner,* 663 P.2d 551, 554 (Alaska 1983). The trial court concluded that Thorstenson had failed to tender back the benefits of his agreement with ARCO. The court granted ARCO's motion for summary judgment partly on Thorstenson's failure to "tender back" his special termination allowance.

■ The purpose of the tender back rule is to protect the defendant in an action for rescission: the defendant should not by rescission sacrifice the benefits of the agreement and at the same time not be restored the benefits previously received by the plaintiff. *See* D. Dobbs, *Law of Remedies* § 4.8, at 297 (1973). If Thorstenson is not required to tender his termination allowance and ultimately recovers nothing on his wrongful discharge claim, ARCO may be forced to sacrifice the benefits of the release (by being forced to litigate a wrongful discharge claim) and yet be unable to recover from Thorstenson the price of the release.

■ Thorstenson's offer of a second mortgage on his home did not constitute tender. "Tender is an offer to perform a condition or obligation coupled with the present ability of immediate performance, so that were it not for a refusal of cooperation by the party to whom tender is made, the condition would be immediately satisfied." *Martindell v. Lake Shore Nat'l Bank,* 15 Ill.App.2d 217, 145 N.E.2d 784, 789 (1957), *rev'd on other grounds,* 15 Ill.2d 272, 154 N.E.2d 683 (1958). The purpose of the tender back rule is not satisfied by such a conditional offer.

■ But the purpose of the rule does not justify the trial court's decision to dismiss Thorstenson's action for failure to tender back the allowance. ARCO will be adequately protected if the trial court grants Thorstenson a reasonable time to tender back his termination allowance with interest.[3] If Thorstenson fails to tender back the allowance, summary judgment on this ground will be appropriate.

## C. THE TRIAL COURT ABUSED ITS DISCRETION IN AWARDING ARCO $8,400 IN ATTORNEY FEES.

ARCO, as the prevailing party below, requested an award of 100% of its actual attorney fees in defending the claims of

to the other party his intention to avoid it. The power of a party to avoid a contract for non-fraudulent misrepresentation or mistake is also lost if the contract has been so far performed or the circumstances have otherwise so changed that avoidance would be inequitable and if damages will be adequate compensation.

**2.** On remand, Thorstenson should be permitted to discover evidence of the facts surrounding his termination.

**3.** At the oral argument on ARCO's motion for summary judgment, ARCO indicated that such an order would be acceptable. The court apparently disregarded this possibility. Furthermore, ARCO and Thorstenson appear to have agreed that this tender back would be with interest.

Thorstenson and Fagan, approximately $15,000. The court estimated that approximately "75% of the work would have had to have been done had [ARCO] been opposing but a single plaintiff ($15,000 × .75 = $11,250)." The court awarded ARCO 75% of *this* figure, or $8,437.50.[4]

Thorstenson's fellow plaintiff, William Fagan, was dismissed from the action by stipulation two days before oral argument was heard on ARCO's motion for summary judgment. Because ARCO's attorneys would, by the court's estimation, have had to perform about 75% of the work actually performed had it been defending against a single plaintiff, there was, so to speak, an *overlap* of 50% in the work performed in defense of each plaintiff's claim.

### ARCO'S FEES

fees incurred in
defending against Fagan

fees incurred in defending
against Thorstenson

The court charged Thorstenson with the overlap. Its reason for doing so is unclear.

Thorstenson argues that he and Fagan should each have been charged with half of the overlap; thus, the court should have calculated ARCO's fees on the basis of one-half of its total fees.[5]

The decision to award attorney fees rests in the discretion of the trial judge and is reviewable on appeal only for an abuse of discretion. *Cooper v. Carlson*, 511 P.2d 1305, 1309 (Alaska 1973). An award constitutes an abuse of discretion only when it is manifestly unreasonable. *Haskins v. Shelden*, 558 P.2d 487, 495 (Alaska 1976).

It could be argued that the court could reasonably have charged Fagan with the overlap: since ARCO agreed to bear the cost of defending against Fagan, and since the cost of defending against Fagan would be 75% of the cost of defending against both, ARCO might have to bear 75% and Thorstenson only 25%.

In support of the trial court's conclusion, it could be argued that ARCO, in agreeing to bear the cost of defending against Fagan, essentially agreed not to pursue a claim against Fagan for attorney fees. This agreement should not impair ARCO's right to pursue compensation for any fees reasonably incurred in defending Thorstenson's claim.

Neither of these arguments is persuasive. We rest our decision instead on the practical implications of the trial court's ruling. If both plaintiffs had remained in the case until after judgment, the trial court would clearly have been required to charge each with an equal share of ARCO's attorney fees. Likewise, if they had dismissed their claims simultaneously, ARCO would have had an equal

---

4. This issue may be moot; however, it is being addressed since Thorstenson may fail to tender back within a reasonable time.

5. Thorstenson also argues that ARCO may claim attorney fees only for work bearing directly on its victorious motion for summary judgment. Thorstenson cites no authority supporting this position. The argument is without merit.

right to fees from each one. To charge the last remaining plaintiff with a grossly disproportionate share of a defendant's attorney fees, though he may have lingered only a few days longer, creates perverse incentives. Each plaintiff should be charged with his proportional share of fees incurred prior to the resolution of his claim.

The trial court abused its discretion in charging Thorstenson with 75% of ARCO's attorney fees. On remand the trial court should allocate to each plaintiff equal portions of those fees incurred by ARCO prior to the dismissal of Fagan's claim.[6]

### III. CONCLUSION

The judgment of the superior court is REVERSED and is REMANDED for proceedings consistent with this opinion.

---

**6.** Both ARCO and Thorstenson cite *Wickwire v. State,* 725 P.2d 695 (Alaska 1986), in support of their positions. In *Wickwire,* a stipulation dismissing individual defendants from Wickwire's action against the state provided that each side would bear its own attorney fees. *Id.* at 703. This court held that the trial court erred in awarding the state *additional* fees for expenses incurred in defending the individual defendants. *Id.* at 704. *Wickwire* addressed only the *additional* fees incurred, and not an *overlap* in fees. Thus it does not bear directly on the question here.