*Notice: This opinion is subject to correction before publication in the PACIFIC REPORTER. Readers are requested to bring errors to the attention of the Clerk of the Appellate Courts, 303 K Street, Anchorage, Alaska 99501, phone (907) 264-0608, fax (907) 264-0878, email corrections@appellate.courts.state.ak.us.*

THE SUPREME COURT OF THE STATE OF ALASKA

| | |
|---|---|
| SIMONE H., ) | |
| ) | Supreme Court No. S-15149 |
| Appellant, ) | |
| ) | Superior Court No. 3PA-10-00163 CN |
| v. ) | |
| ) | O P I N I O N |
| STATE OF ALASKA, ) | |
| DEPARTMENT OF HEALTH & ) | No. 6870 – March 7, 2014 |
| SOCIAL SERVICES, OFFICE OF ) | |
| CHILDREN'S SERVICES, ) | |
| ) | |
| Appellee. ) | |
| ) | |

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Palmer, Gregory Heath, Judge.

Appearances: Renee McFarland, Assistant Public Defender, and Quinlan Steiner, Public Defender, Anchorage, for Appellant. David A. Wilkinson, Assistant Attorney General, Fairbanks, and Michael C. Geraghty, Attorney General, Juneau, for Appellee. Margaret McWilliams, Assistant Public Advocate, Juneau, and Richard Allen, Public Advocate, Anchorage, for Guardian Ad Litem.

Before: Fabe, Chief Justice, Stowers, Maassen, and Bolger, Justices. [Winfree, Justice, not participating.]

BOLGER, Justice.

## I.  INTRODUCTION

Simone H. appeals the trial court's order terminating her parental rights to her son, Irving.[1]  Simone challenges the trial court's denial of her request to have Irving's therapy records released to her for use during the termination trial and the trial court's finding that the State Department of Health and Social Services, Office of Children's Services (OCS) made reasonable efforts to provide services designed to enable Irving's safe return to her custody.  We conclude that the trial court acted within its discretion in denying Simone's request for access to Irving's therapy records and that substantial evidence supported the trial court's finding that OCS made reasonable efforts to reunify Simone with Irving.

## II.  FACTS AND PROCEEDINGS

Simone is the mother of Irving, who was born in 2003.  Simone has a history of engaging in relationships with violent partners, and has mental health and substance abuse issues.  In 2009 Simone began counseling with psychiatric nurse practitioner Kathleen Hammaker, who also provided Simone with mental health medication management services.  Hammaker treated Simone for obsessive-compulsive disorder, posttraumatic stress disorder, panic disorder, and mood disorders, and she prescribed Simone various medications.

In October 2010, after receiving a protective services report alleging that Simone had failed to seek medical attention for Irving after he had been injured in a bicycle accident, that she was addicted to drugs, and that she had been leaving Irving unattended for hours at a time, an OCS specialist and a police officer went to Simone's home, where they found alcohol, illicit drugs, and drug paraphernalia.  As a result, Simone's partner, who had recently been released from jail, was arrested for parole

---

[1]  Pseudonyms are used to protect the privacy of the family.

violations. Simone refused to participate in a drug screen. OCS took emergency custody of Irving and filed an emergency petition to have the child adjudicated a child in need of aid (CINA).

OCS developed a case plan for Simone that called for her to participate in parenting classes, complete a family violence intervention program, complete a psychological evaluation, continue to engage in mental health treatment, obtain a substance abuse assessment, participate in drug screens, and participate in family contact with Irving. Hammaker arranged for Simone to begin receiving services from Daybreak, an organization that provides case management services including skill development, connection to service providers, transportation to appointments, and assistance in organizing daily activities to persons who have been diagnosed with mental illness. Simone's Daybreak counselor, Polly-Beth Odom, prepared a case plan that was designed to facilitate Simone's compliance with OCS's case plan. Odom, who shared the plan with OCS, testified that Daybreak's goals included assisting Simone with mental health recovery and family reunification. She stated that Daybreak helped Simone with housing, social connections, budgeting, life skills, safety monitoring, and avoiding abusive relationships.

In March 2011 OCS referred Simone to Dr. Heather Macomber for a neuropsychological evaluation because it was concerned about her mental condition. Dr. Macomber recommended that OCS set specific goals for Simone and that Simone continue to receive psychiatric care and medication and participate in therapy. Dr. Macomber did not recommend that Simone participate in substance abuse treatment.

Shortly after this evaluation Simone tested positive for methamphetamine. OCS thereupon referred her for a substance abuse assessment at Set Free Alaska, which

was conducted in June 2011. Simone did not participate in the intensive outpatient treatment that the substance abuse assessment recommended.[2]

In late 2011, OCS considered placing Irving with his paternal grandmother in Pennsylvania. Simone then moved to Pennsylvania, over OCS's objection. Her move temporarily ended her ability to have contact with Irving.

In December 2011, placement with the grandmother was denied under the Interstate Compact on the Placement of Children,[3] and the following month Simone returned to Alaska. She reengaged in counseling and medication management services with Hammaker and in case management services with Daybreak. She requested that visits be restarted and, in April 2012, they were. Several visits were held at the OCS facility from April through June, but these visits were again suspended when Simone stated that she would commit suicide if Irving were not returned to her custody, and OCS tried to locate an appropriate visitation supervisor.

In May 2012, OCS referred Simone for a behavior health assessment at Alaska Family Services. The assessment recommended that Simone engage in Alaska Family Services' dual diagnosis treatment program and in individual counseling. Simone began treatment that month but did not make adequate progress in the program. She tested positive for illicit drugs while in treatment and was inconsistent in taking her prescription medications. According to the program's clinical director, by the time of Simone's discharge from the program in August 2012, her problems were worsening rather than improving. Alaska Family Services discharged Simone with a recommendation that she participate in a residential treatment program. Alaska Family

---

[2]    Simone claimed at the termination trial that Set Free Alaska refused to accept her into its treatment program because she was taking medications to address her mental health issues.

[3]    AS 47.70.010-.080.

Services offered to help Simone enroll in a residential program, but Simone did not take advantage of the offer.

In May 2012, OCS petitioned to terminate Simone's parental rights to Irving. During the trial on the petition Simone asked the trial court to compel Irving to testify and to order the release of Irving's therapy records to her. After examining Irving's therapy records in camera, the trial court denied both requests.

On March 12, 2013, the trial court issued an order terminating Simone's parental rights to Irving. The court found that Irving was a child in need of aid due to: (1) Simone's history of violent relationships and her failure to seek medical attention for Irving following the bicycle accident;[4] (2) Simone's history of relationships involving domestic violence;[5] (3) Simone's history of substance abuse and failed attempts at treatment;[6] and (4) the combination of Simone's mental illnesses, her inconsistency in taking her prescribed mental health medication, her abuse of substances, and her continued participation in abusive relationships.[7]

The trial court found that OCS made reasonable efforts to provide the family with support services designed to enable the safe return of Irving to Simone's custody. These efforts included identifying the issues Simone needed to address, facilitating family contact, coordinating with her service providers, and providing Simone with case planning meetings and case plans, drug screens, substance abuse

---

[4]  *See* AS 47.10.011(6) (substantial physical harm to the child or substantial risk thereof).

[5]  *See* AS 47.10.011(8) (mental injury to the child or substantial risk thereof).

[6]  *See* AS 47.10.011(10) (parental substance abuse).

[7]  *See* AS 47.10.011(11) (parental mental illness, serious emotional disturbance, or mental deficiency of a nature and duration that risks substantial physical harm or mental injury to the child).

assessments, and a neuropsychological assessment. The trial court also found that Simone had not remedied conduct or conditions under her control that placed Irving at risk of harm, and that termination of Simone's parental rights was in Irving's best interests.

Simone appeals, challenging the trial court's denial of her request for access to Irving's therapy records and its finding that OCS made reasonable efforts to provide her with family reunification services.

## III. STANDARD OF REVIEW

We have not previously determined the appropriate standard for review of a trial court's ruling on a request that a child's confidential communications with a psychotherapist be disclosed for use in the child's CINA proceeding. Alaska Child in Need of Aid Rule 9(b)(3)(B) provides that such communications are presumptively privileged. Rule 9(b)(3)(D) prescribes factors a trial court must consider before allowing, limiting, or prohibiting disclosure and use of such communications if requested to do so by a party. We will review a trial court's decision on a request for disclosure of such confidential communications for an abuse of discretion.[8] When applying a multi-factor test, "[t]he superior court abuses its discretion if it considers improper

---

[8]    *See Noffke v. Perez*, 178 P.3d 1141, 1144 (Alaska 2008) ("The court's discovery rulings are . . . reviewed for an abuse of discretion." ); *Booth v. State*, 251 P.3d 369, 373 (Alaska App. 2011) ("[T]he 'abuse of discretion' standard of review applies to situations where the law allows or requires the judge . . . to reach a decision by considering and weighing various factors . . . ."). Whether the privilege applies would be a legal question that is not raised in this case. *See Griswold v. Homer City Council*, 310 P.3d 938, 940 (Alaska 2013).

factors . . ., fails to consider statutorily mandated factors, or assigns disproportionate weight to some factors while ignoring others."[9]

Whether OCS made reasonable efforts to provide services to reunify a family is a mixed question of fact and law.[10] We review the trial court's factual findings for clear error and its legal determinations de novo.[11] A factual finding is clearly erroneous if, after reviewing the record in the light most favorable to the prevailing party, we are definitely and firmly convinced that the finding is mistaken.[12] Conflicting evidence is generally not sufficient to overturn a trial court's factual findings, and we will not reweigh evidence when the record provides clear support for the trial court's ruling.[13]

## IV. DISCUSSION

### A. The Trial Court Did Not Abuse Its Discretion In Denying Simone's Request For Disclosure Of Irving's Therapy Records.

CINA Rule 9(b)(3) governs the introduction of evidence that is subject to the evidentiary privilege for communications between a psychotherapist and a patient.

---

[9]     *Iverson v. Griffith*, 180 P.3d 943, 945 (Alaska 2008) (applying this standard of review to a child custody decision); *see also In re M.K.*, 278 P.3d 876, 881 (Alaska 2012) (applying the same standard to a guardianship appointment).

[10]     *Sherman B. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 290 P.3d 421, 428 (Alaska 2012) (citing *Christina J. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 254 P.3d 1095, 1104 (Alaska 2011)).

[11]     *Id.* at 427-28 (citing *Christina J.*, 254 P.3d at 1103-04).

[12]     *Barbara P. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 234 P.3d 1245, 1253 (Alaska 2010) (quoting *Brynna B. v. State, Dep't of Health & Soc. Servs., Div. of Family & Youth Servs.*, 88 P.3d 527, 529 (Alaska 2004)).

[13]     *Sherman B.*, 290 P.3d at 428 (quoting *Maisy W. v. State, Dep't of Health & Soc. Servs., Office of Children's Servs.*, 175 P.3d 1263, 1267 (Alaska 2008)).

The rule states that the privilege "applies to the child unless the child or the child's guardian ad litem waives the privilege, or the party seeking disclosure shows that the need for the requested disclosure outweighs the child's interest in confidentiality."[14] The rule provides that the trial court must consider the content and nature of the communication, the purposes of the CINA statutes as expressed in AS 47.05.060,[15] the purposes of Alaska Rule of Evidence 504,[16] whether other effective means to obtain the information are available, and whether the public interest and need for disclosure outweigh the potential injury to the patient and the patient's relationship with the therapist.[17] The rule specifies that the trial court may inspect the requested records in

---

[14] CINA Rule 9(b)(3)(B).

[15] AS 47.05.060 provides:

The purpose of this title as it relates to children is to secure for each child the care and guidance, preferably in the child's own home, that will serve the moral, emotional, mental, and physical welfare of the child and the best interests of the community; to preserve and strengthen the child's family ties unless efforts to preserve and strengthen the ties are likely to result in physical or emotional damage to the child, removing the child from the custody of the parents only as a last resort when the child's welfare or safety or the protection of the public cannot be adequately safeguarded without removal; and, when the child is removed from the family, to secure for the child adequate custody and care and adequate planning for permanent placement of the child.

[16] Evidence Rule 504 governs application of the psychotherapist-patient privilege in civil and criminal cases generally. The rule "is designed to encourage those with mental or emotional problems to seek help." Alaska R. Evid. 504 commentary.

[17] CINA Rule 9(b)(3)(D).

camera and that the court may allow, limit, or prohibit disclosure and use of the communications.[18]

The rule as originally drafted did not allow invocation of a psychotherapist-parent privilege in a CINA case.[19] In 2001, we amended the rule to presumptively apply the privilege to communications between children and their therapists, while presumptively denying application of the privilege to communications between parents and their therapists.[20] Both presumptions are rebuttable.[21]

The impetus for the amendment was a concern that, while the former rule allowed evidence of "child abuse and neglect [to] be reported and evidence relating to the parent [to] be available to the court[,] . . . when the rule was adopted the 'victim's' loss of confidentiality was not contemplated."[22] At its meeting on January 8, 1998, the CINA/Delinquency Rules Committee noted that the primary intent of the proposed rule change was "to encourage children to participate in therapy by protecting the counseling relationship."[23]

The committee noted that policy concerns dictated that different rules should govern applicability of the privilege for children and for parents,

---

[18]    *Id*.

[19]    Former CINA Rule 9(b) (amended 2001) provided, in relevant part, "The . . . psychotherapist-patient privilege [and] Evidence Rule 504 . . . do not apply in child in need of aid proceedings."

[20]    Alaska Supreme Court Order No. 1442 (May 24, 2001).

[21]    CINA Rule 9(b)(3)(B), (C).

[22]    Memorandum from Fairbanks Superior Court Judge Niesje Steinkruger to Court Rules Attorney Christine Johnson (May 9, 1996).

[23]    Minutes, Alaska CINA/Delinquency Rules Comm. (Jan. 8, 1998).

because the parent and the child are in therapy for different reasons. The parent usually receives therapy to fix the behavior which is the basis of the case. The parties and the court need to know how the parent has progressed in order to make decisions about disposition. The child, on the other hand, is usually in counseling to fix a harm that has been done to the child. Although it may be helpful for the parties to know what the child says in therapy, this disclosure may reduce the chances that the therapy will succeed.[24]

The history of this rule amendment is thus consistent with our observation when we first recognized the existence of a common law psychotherapist-patient privilege: "in balancing injury to the [psychotherapist-patient relationship] by fear of disclosure, against the benefit to justice by compelling disclosure, the scales weigh heavily in favor of confidentiality."[25]

In this case, Simone asked the trial court to provide her with access to records of Irving's sessions with his psychotherapist for her to use in the trial to terminate her parental rights.[26] After examining the records in camera the trial court denied Simone's request. The court found that the requested records "only affirm [Irving's] need for permanency," and that their disclosure would cause Irving undue emotional and mental stress, would constitute an invasion of his privacy, and would undermine his therapeutic relationship with his current and future counselors.

---

[24]    *Id*.

[25]    *Allred v. State*, 554 P.2d 411, 418 (Alaska 1976). In 1979 we codified the psychotherapist-patient privilege in Evidence Rule 504. Alaska Supreme Court Order 364 (May 29, 1979).

[26]    Irving's guardian ad litem refused to waive the privilege in regard to the requested records, as allowed by CINA Rule 9(b)(3)(F)(ii).

Simone argues on appeal that Irving's therapy records could contain evidence that Irving was having difficulty bonding with his foster family and that there was no evidence that Irving would suffer harm if the records were disclosed. But we have examined the therapy records ourselves and confirmed that they do not contain the information that Simone was seeking. And the trial court's finding that disclosure could undermine Irving's relationship with his counselors was based on the informed recommendation of Irving's guardian ad litem. We conclude that the trial court considered the relevant factors and that the order denying disclosure of these records was not an abuse of discretion.

**B.    The Trial Court Did Not Deny Simone Due Process By Relying On Irving's Therapy Records In Reaching Any Decision In This Case.**

Simone argues that the trial court denied her due process by relying on Irving's therapy records in making decisions in this case without providing Simone access to the contents of the records. She relies on the trial court's statement in the order denying release of the records that "the records only affirm [Irving's] need for permanency." But CINA Rule 9(b)(3)(D) required the court to consider "the content and nature" of the records to determine whether disclosure should be allowed. We read the trial court's conclusion as a statement that the records did not contain the type of material that Simone was requesting. After reviewing the record, we agree with the trial court's conclusion that the therapy records did not contain information that would support an attack on Irving's relationship with his foster parents; they only contained information that supported Irving's need for permanency.

Moreover, Simone makes no showing that the therapy records played a role in the trial court's decision to terminate Simone's parental rights. The trial court did not discuss or even mention the therapy records in its order terminating Simone's parental rights. The trial court's best interests finding was based entirely on its evaluation of

factors involving the actions of Simone and Irving's father and the demonstrable harm Irving suffered while in their care. We thus conclude that the court did not consider these records in a way that could compromise Simone's right to due process.

### C. The Trial Court's Finding That OCS Made Reasonable Efforts To Reunite Simone With Irving Was Supported By Substantial Evidence.

Before a trial court may terminate parental rights to a child the court must find that OCS provided timely, reasonable efforts to provide family support services to the parent designed to enable the safe return of the child to the family home.[27] Simone argues that OCS did not incorporate the recommendations contained in Dr. Macomber's neuropsychological evaluation into her case plan, that OCS did not provide her with substance abuse treatment appropriate to her circumstances, and that OCS improperly deprived her of contact with Irving. But our review of the record supports the trial court's finding that the efforts OCS provided for Simone were reasonable.

The record suggests that Simone's behavior complicated OCS's efforts to provide her with both mental health and substance abuse services. OCS initially arranged for Simone to receive a neuropsychological evaluation, but two weeks after the evaluation was performed she tested positive for methamphetamine, thus causing the focus of her case plan to shift from mental health treatment to substance abuse treatment. OCS arranged a substance abuse assessment that recommended intensive outpatient treatment, but Simone declined to participate.[28]

---

[27] AS 47.10.086(a); AS 47.10.088(a)(3).

[28] According to Simone, Set Free Alaska refused to accept her into its treatment program because at the time she was taking medication to treat her mental health conditions. The record provides no corroboration for Simone's claim, nor does it indicate that she informed OCS of this situation so that OCS could assist her in locating an alternate treatment provider.

In May 2012, OCS referred Simone for a behavior health assessment at Alaska Family Services. That assessment noted that Simone was "in denial of her substance abuse problems" and recommended that she enroll in Alaska Family Services' dual diagnosis treatment program. On appeal, Simone complains that the treatment she received at Alaska Family Services was deficient because it consisted of group therapy sessions, and did not incorporate individual therapy, which Dr. Macomber had recommended.

But the clinical director of Alaska Family Services testified that Simone's program incorporated both individual and group therapy components. The director testified that Simone's participation in group therapy did not increase during her time in the program because she never began functioning at a high enough level to allow such participation. Simone failed to successfully complete the program because she did not seek out required sober supports, she continued to use illicit substances, and she was not consistent in taking her prescription mental health medications.

Simone's conduct also complicated OCS's efforts to provide visitation. OCS provided Simone and Irving consistent contact until Simone chose to move to Pennsylvania against OCS's wishes. On her return to Alaska, it took OCS a couple of months to reestablish regular visits, but once contact was reestablished Simone again disrupted the program by threatening to commit suicide if Irving were not returned to her custody. OCS was still looking for another appropriate facility to host visits at the time of the termination trial.

The trial court also found that OCS provided Simone with many additional support services.[29] These findings are not contested. We affirm the trial court's

_____

[29] The court found that OCS helped Simone identify issues she needed to address, facilitated family contact, coordinated with Simone's service providers, (continued...)

conclusion that OCS made reasonable efforts to enable Irving to return to Simone's custody.

## V.     CONCLUSION

We therefore AFFIRM the superior court's order terminating Simone's parental rights.

---

[29](...continued)
provided case planning meetings and case plans, offered drug screens, and referred Simone for substance abuse assessments and a neuropsychological assessment.