*Notice: This opinion is subject to correction before publication in the PACIFIC REPORTER. Readers are requested to bring errors to the attention of the Clerk of the Appellate Courts, 303 K Street, Anchorage, Alaska 99501, phone (907) 264-0608, fax (907) 264-0878, email corrections@akcourts.gov.*

THE SUPREME COURT OF THE STATE OF ALASKA

| | | |
|---|---|---|
| JERRY McCAVIT and BRENDA McCAVIT, | ) ) ) | Supreme Court No. S-18261 |
| Appellants, | ) ) | Superior Court No. 3PA-13-00918 CI |
| v. | ) ) | O P I N I O N |
| RANDY LACHER, as Personal Representative of the Estate of Louis Lacher, | ) ) ) ) ) | No. 7719 – September 6, 2024 |
| Appellees. | ) ) ) | |

Appeal from the Superior Court of the State of Alaska, Third Judicial District, Palmer, Kristen C. Stohler, Judge.

Appearances: Kevin T. Fitzgerald, Ingaldson Fitzgerald, P.C., Anchorage, for Appellants. Brian Duffy, Gruenstein, Hickey, Havelock & Duffy, Anchorage, for Appellees.

Before: Carney, Borghesan, Henderson, and Pate, Justices. [Maassen, Chief Justice, not participating.]

CARNEY, Justice.

## I. INTRODUCTION

After lakefront property owners built an extension on their dock, their neighbors sued, claiming the extension unreasonably interfered with their riparian rights and constituted a private nuisance. The superior court agreed and issued an injunction requiring removal of the dock extension. The dock owners appealed and we

articulated a new rule of reasonableness to determine whether the dock unreasonably interfered with the neighbors' rights. We remanded for the superior court to apply the new rule, and the court again found for the neighbors. The dock owners again appeal. We conclude that the superior court did not abuse its discretion when it applied the new rule or err by finding that the dock constituted a private nuisance. But we vacate the award of attorney's fees and remand for further consideration of the issue.

## II.  FACTS AND PROCEEDINGS

### A.  Facts

When we first considered this case five years ago, we detailed the events and proceedings that brought it before us.[1] We summarize and update that history here.

The Lachers[2] own property on Wasilla Lake; the McCavits own adjoining property to the east of the Lachers. Both families own their respective property up to the ordinary high water mark of Wasilla Lake and use the lake for recreation. The Lachers have owned their property since 1974 and the McCavits have owned theirs since 1991; neither property had a dock when purchased.

The Lachers' neighbors to the west permitted the Lachers to use their dock for 30 years. But the neighbors withdrew their permission to use the dock around 2012, following several incidents involving the Lachers' grandchildren. The Lachers then considered building a dock from their own property around that time and obtained a permit to do so in November 2012. However, the Lachers never constructed or made definite plans to construct a dock.

The McCavits built a dock from their property in 1992 and added a 16' x 20' extension to the original dock between 2011 and 2012. The extension was attached at a right angle to the original dock and extended to the west, in the direction of the Lachers' property. The McCavits obtained a permit from the Alaska Department

---

[1] *McCavit v. Lacher* (*McCavit I*), 447 P.3d 726 (Alaska 2019).

[2] Barbara and Louis Lacher died while this appeal was pending.

of Fish and Game (ADFG) for the original dock construction but failed to seek a permit for the extension.[3] The Lachers objected to the extension and the dispute over the McCavits' dock began.

## B. Proceedings

### 1. Initial trial proceedings

The Lachers initially tried to obtain relief through the Alaska Department of Natural Resources (DNR). The Lachers' daughter, Randy, was employed by DNR at the time and attempted to have the agency enforce its "Generally Allowed Uses" regulation against the McCavits. The regulation allows an upland littoral landowner to build a dock for personal, noncommercial use, provided that the dock is within the "projected sidelines" of the upland littoral property or is built with the consent of the neighboring littoral landowner.[4] DNR declined Randy's request to enforce the regulation because the Commissioner had determined that the "projected sidelines" language was "vague and ambiguous."

The Lachers then sued the McCavits in superior court, alleging the dock interfered with their riparian rights and constituted a private nuisance and a trespass. The court granted the McCavits' unopposed motion to require the Lachers to join DNR as a necessary party because the dock was located on state land. The Lachers amended

---

[3] ADFG sent the McCavits a Notice of Violation for constructing the extension without a permit in the summer of 2012 but took no further action although it could have supported a misdemeanor charge. *See* AS 16.05.881 ("If a person or governmental agency begins construction on a work or project or use for which notice is required . . . without first providing plans and specifications subject to the approval of the commissioner . . . , the person or agency is guilty of a misdemeanor.").

[4] 11 Alaska Administrative Code (AAC) 96.020(a)(2)(B). Throughout this opinion, we use the terms "riparian" and "littoral" interchangeably. "Riparian" means "[o]f, relating to, or located on the bank of a river or stream (or occasionally another body of water, such as a lake)." *Riparian*, BLACK'S LAW DICTIONARY (12th ed. 2024). "Littoral" means "[o]f, relating to, or involving the coast or shore of an ocean, sea, or lake." *Littoral*, *id.*

their complaint to allege that DNR violated their due process rights by arbitrarily and capriciously failing to enforce its regulation. DNR successfully moved for summary judgment, arguing that it was not required to act, and was dismissed as a party. The court also granted the McCavits' motion for summary judgment on the Lachers' trespass claim on the basis that the Lachers did not have title to the lake and therefore could not maintain a trespass claim.

Trial eventually proceeded on the remaining riparian rights and private nuisance claims against the McCavits. In May 2017 the superior court issued its findings of fact and conclusions of law. The court found the McCavits' dock unreasonably interfered with the Lachers' riparian rights and constituted a private nuisance. It ordered the McCavits to remove the dock extension. The Lachers then moved for and were awarded attorney's fees and costs against the McCavits. The McCavits appealed.

### 2. Appeal

We issued our opinion in August 2019.[5] We extended the rule of reasonableness we had previously applied to other water rights disputes to the determination of riparian landowners' rights.[6] To determine the reasonableness of a landowner's use, we instructed the fact finder to consider various factors in light of the specific facts and circumstances of the case.[7] We directed courts to the nine factors from the Restatement (Second) of Torts to guide this inquiry: (1) the use's purpose; (2) the use's suitability; (3) the use's economic value; (4) the use's social value; (5) the extent or amount of harm the use causes; (6) the practicality of adjusting the use or method of use to avoid harm; (7) "the practicality of adjusting the quantity of water

---

[5]     *McCavit I*, 447 P.3d 726 (Alaska 2019).

[6]     *Id.* at 735.

[7]     *Id.*

-4-                                                                      **7719**

used"; (8) existing values of the use; and (9) "the justice of requiring the user causing harm to bear the loss."[8]

We remanded the case for the superior court to apply our newly articulated rule to the Lachers' riparian rights claim and explained that the court should only reach the private nuisance claim if it found the McCavits' dock unreasonably interfered with their riparian rights.[9] We also vacated the superior court's award of attorney's fees and costs.[10]

### 3.    Remand

A different superior court judge handled the case on remand. The parties submitted additional briefing addressing the factors of the new reasonableness test, and the court held an evidentiary hearing. Each side presented expert testimony about the cost of removing the McCavits' dock extension; their estimates differed sharply.[11] The Lachers' expert testified that building a dock on the western side of the Lachers' property would be significantly more expensive than building it near the McCavits' dock extension.[12] The Lachers' son and guardian, Louis, Jr., testified on behalf of his parents. He reiterated that they wanted the McCavits' dock to "be vacated and removed so they can have room to build their dock in the most advantageous area that would support it." Jerry McCavit testified about his family's use of their dock and that leaving

---

[8]    *Id.* at 735-36 (citing RESTATEMENT (SECOND) OF TORTS § 850A (AM. L. INS. 1979)).

[9]    *Id.* at 736.

[10]    *Id.* at 737.

[11]    The Lachers' expert estimated removing the dock extension would cost either $2,637.53 or $3,336.44, depending on whether two or four pilings had to be removed. The McCavits' expert estimated removal would cost $18,000.

[12]    According to the expert, building the dock on the eastern side of the property near the McCavits' dock would cost only $886.66, while building it on the west side of the property would also require building stairs or a ramp and would cost either $14,606.15 or $13,889.35, depending on the type of approach used.

10 or 15 feet between their extension and the Lachers' proposed dock would be enough distance for safe boating.

The superior court ruled in favor of the Lachers in November 2021. It issued a permanent injunction requiring the McCavits to remove their dock extension. It adopted the findings of fact from the 2017 trial because they "were undisturbed on appeal." The court found that the McCavits unreasonably interfered with the Lachers' riparian rights. It then went on to find that the interference with the Lachers' rights to wharf out and use their lakefront for recreational purposes constituted a private nuisance because the gravity of the harm caused to the Lachers outweighed the usefulness of the dock extension.

The Lachers moved for attorney's fees and costs. The court awarded them their full costs and an enhanced attorney's fees award under Alaska Civil Rule 82(b)(3).

The McCavits again appeal, challenging the superior court's findings that their dock unreasonably interfered with the Lachers' riparian rights and constituted a private nuisance, and the award of attorney's fees and costs.

## III. STANDARD OF REVIEW

In *McCavit I* we explained that whether a riparian or littoral landowner's access to or use of adjacent navigable and public waters is reasonable "is a question of fact, to be determined by weighing a variety of factors."[13] "[W]here (a) the law does not specify a particular 'right' answer or response to the situation, but instead only specifies the factors or criteria that a judge should consider, and (b) reasonable judges, given the same facts and applying the correct criteria, might come to differing conclusions," we review a trial court's conclusion for abuse of discretion.[14] We have explained in the context of other multi-factor tests that "[i]f the trial court has examined

---

[13] *McCavit I*, 447 P.3d at 735.

[14] *Booth v. State*, 251 P.3d 369, 373 (Alaska App. 2011); *see also Heynen v. Fairbanks*, 293 P.3d 470, 474 n.9 (Alaska 2013) (citing *id.*).

all relevant factors, an abuse of discretion exists only where the trial court's determination is manifestly unreasonable."[15] Factual findings relating to the factors are reviewed for clear error.[16] "A factual finding is clearly erroneous when we are left with a definite and firm conviction on the entire record that a mistake has been made."[17]

We review a superior court's award of attorney's fees for abuse of discretion.[18] "We will find an abuse of discretion when the superior court's award of attorney's fees is 'arbitrary, capricious, manifestly unreasonable, or improperly motivated.' "[19]

## IV. DISCUSSION

### A. The Superior Court Did Not Err By Adopting The Findings From The First Trial.

Following the first trial, the superior court concluded the dock extension interfered with the Lachers' riparian rights because they could not build a dock where they wanted without "conflict[ing] with the McCavits' dock," which undermined their ongoing recreational use of the lake. The court specifically concluded that "the Lachers' ability to wharf out and their reasonable use and enjoyment of Wasilla Lake

---

[15]     *Baypack Fisheries, L.L.C. v. Nelbro Packing Co.*, 992 P.2d 1116, 1118 (Alaska 1999) (internal quotation marks omitted) (reviewing consideration of forum non conveniens factors for abuse of discretion); *see also Bragg v. Teslow*, 533 P.3d 533, 538-39 (Alaska 2023) (applying same standard to consideration of attorney's fees enhancement factors); *Simone H. v. State, Dep't of Health & Soc. Servs., Off. of Child.'s Servs.*, 320 P.3d 284, 287 (Alaska 2014) (applying same standard to child custody factors); *In re Protective Proceedings of M.K.*, 278 P.3d 876, 881 (Alaska 2012) (applying same standard to guardianship appointment factors).

[16]     *See, e.g.*, *Bragg*, 533 P.3d at 539 ("When reviewing an enhanced fee award, we generally . . . review findings of fact for clear error.").

[17]     *Riddle v. Lanser*, 421 P.3d 35, 44 (Alaska 2018) (internal quotation marks omitted) (quoting *Fernandes v. Portwine*, 56 P.3d 1, 4 (Alaska 2002)).

[18]     *Hodari v. State, Dep't of Corr.*, 407 P.3d 468, 471 (Alaska 2017).

[19]     *Id.* (quoting *Roderer v. Dash*, 233 P.3d 1101, 1106 (Alaska 2010)).

has been significantly impaired" and characterized the extension as being "in front of" the Lachers' property.

The superior court's 2022 decision adopted the 2017 findings of fact and conclusions of law in full. It explicitly adopted the finding that the Lachers' rights to wharf out and to reasonable use and enjoyment of the lake were "significantly impaired" and again noted that the extension was "in front of" the Lacher property.

The McCavits challenge the superior court's reliance on the findings and conclusions from the first trial, arguing that our decision in *McCavit I* disturbed certain conclusions and the court therefore should have reweighed the evidence. They specifically challenge the court's findings that their dock extension was "in front of" the Lachers' property and significantly impaired the Lachers' use and enjoyment of the lake.

In *McCavit I* we addressed the superior court's legal reasoning and did not direct the court to reconsider any particular factual findings.[20] When a case is reassigned to a new judge, the new judge has discretion to overrule the factual findings made by the previous judge "if convinced that that ruling is erroneous," but we have cautioned that "this power is not to be used lightly."[21] This is consistent with Alaska Civil Rule 52's directive that "due regard shall be given to the opportunity of the trial court to judge the credibility of the witnesses."[22] The parties presented extensive testimony and evidence both at the original trial and the evidentiary hearing on remand. Their evidence often conflicted: their experts provided vastly different estimates for the cost of removing the extension and the parties offered differing accounts of their

---

[20]    *McCavit I*, 447 P.3d 726, 737 (Alaska 2019).

[21]    *West v. Buchanan*, 981 P.2d 1065, 1067 (Alaska 1999) (quoting *Stepanov v. Gavrilovich*, 594 P.2d 30, 36 (Alaska 1979)), *superseded by rule on other grounds as stated in Sellers v. Kurdilla*, 377 P.3d 1, 11 (Alaska 2016).

[22]    Alaska R. Civ. P. 52(a).

interactions and use of the lake. It ultimately is "the trial judge's province" to resolve conflicting evidence.[23]

Although DNR chose not to enforce the "projected sidelines" language in its regulation due to its ambiguity, the superior court was not barred from finding, based on the evidence before it, that the extension was "in front of" either property. The court heard testimony about and reviewed exhibits of the extension's placement during the initial trial and, although the parties disagreed about whether it was an accurate description, there was sufficient evidence before the court to determine the extension was "in front of" the Lacher property. The superior court similarly heard testimony about the effect the extension had on the Lachers' use and enjoyment of the lake, including that it limited where they could build their own dock and significantly increased the costs associated with building a dock.

Because there was evidence in the record to support the factual findings from the first order, the court did not clearly err by adopting them on remand.

### B. The Superior Court Did Not Abuse Its Discretion By Determining That The McCavits' Access Unreasonably Interfered With The Lachers' Riparian Rights.

The McCavits argue the superior court erred by determining that their dock extension unreasonably interfered with the Lachers' riparian rights. As we clarified above, the standard of review for an unreasonable interference claim is abuse of discretion, but we review the factual findings underlying the application of the reasonableness rule for clear error.

The superior court determined that the McCavits unreasonably interfered in two ways: first, the extension unreasonably interfered with the Lachers' right to

---

[23] *Weinberg v. N. Alaska Dev. Corp.*, 384 P.2d 450, 452-53 (Alaska 1963) (declining to disturb findings based on conflicting evidence where court's final conclusion was "amply supported").

wharf out, and second, it unreasonably interfered with the Lachers' use and enjoyment of the lake, including their existing recreational uses.

When two landowners exercising the same right interfere with one another, "the superior court must compare the two uses."[24] The reasonable use rule requires the court to consider both "whether the injured landowner's allegedly interfered-with use is reasonable" and "whether the use causing the alleged interference is unreasonable."[25] In *McCavit I* we held that a fact finder "must consider various factors in the context of the specific facts and circumstances of the particular case" and outlined nine factors the superior court may consider.[26] In its order on remand the superior court examined each of these factors — including factors that did not squarely apply in this context, like the practicality of adjusting the quantity of water used.

Although the court could have better explained its findings as to some of the factors,[27] there is evidence in the record to support them and we are not left with a definite and firm conviction that a mistake has been made.[28] At both the initial trial and the evidentiary hearing on remand, evidence was presented that the location of the

---

[24] *McCavit I*, 447 P.3d at 735.

[25] *Id.*

[26] *Id*. These include: (1) the use's purpose; (2) the use's suitability; (3) the use's economic value; (4) the use's social value; (5) the extent or amount of harm the use causes; (6) the practicality of adjusting the use or method of use to avoid harm; (7) the practicality of adjusting the quantity of water used; (8) existing values of the use; and (9) the justice of requiring the user causing harm to bear the loss. *Id*. at 735-36.

[27] The court's findings on some factors were more thoroughly supported than others. The court explained its finding on the use's economic value in detail, citing testimony from trial and the evidentiary hearing on remand and making specific findings on witness credibility. By contrast it simply adopted the first superior court's findings that the extent of the harm was "significant" and stated that "justice require[d]" the McCavits to bear the cost of removing the extension, without providing further explanation for either of those factors.

[28] *See Burton v. Fountainhead Dev., Inc.*, 393 P.3d 387, 392 (Alaska 2017).

McCavits' dock prevented the Lachers from using a portion of their shoreline and that building their own dock further west on their property would be far more costly than building it closer to the McCavits' dock. Although there was conflicting testimony on the matter, there was evidence in the record to suggest it would be less costly for the McCavits to remove their dock extension than for the Lachers to build further west. The evidence also showed that the McCavits had not obtained a permit for the construction of the extension and had received an ADFG notice of violation for failing to do so. Given those facts it was not unreasonable for the superior court to conclude that the harm was significant and that justice required the McCavits to bear the cost of removing the extension. Although some of its discussion lacks detail, the record supports the findings and the order is sufficient to give us "a clear understanding of the basis for the decision made" as to those factors.[29]

The superior court also did not abuse its discretion when it weighed the factors. Abuse of discretion is a deferential standard. "If the trial court has examined all relevant factors, an abuse of discretion exists only where the trial court's determination is manifestly unreasonable.[30] The superior court explicitly discussed all nine factors as it weighed the neighbors' rights to and reasonableness of their uses of the lake, and there was evidence to support the factual findings on each factor. The court therefore did not abuse its discretion by concluding the reasonableness rule favored the Lachers.

### C.  The Superior Court Did Not Clearly Err By Finding The McCavits' Dock Extension Was A Private Nuisance.

The McCavits also challenge the superior court's finding that their dock extension constituted a private nuisance. Alaska Statute 09.45.255 defines a private

---

[29]  *See Crowley v. N. Aviation, LLC*, 441 P.3d 407, 416-17 (Alaska 2019) (quoting *Sullivan v. Subramanian*, 2 P.3d 66, 69 (Alaska 2000)).

[30]  *Baypack Fisheries, L.L.C. v. Nelbro Packing Co.*, 992 P.2d 1116, 1118 (Alaska 1999) (internal quotation marks omitted).

nuisance as "a substantial and unreasonable interference with the use or enjoyment of real property, including water." The McCavits argue that the court's order failed to address why the dock's alleged interference was "substantial" and simply concluded without explanation that it was unreasonable because the gravity of the harm it caused outweighed its usefulness.

We have approvingly cited the Restatement's balancing test for determining whether there has been an "unreasonable interference" in the private nuisance context.[31] To determine whether an interference is unreasonable, the Restatement's balancing test requires a court to weigh the gravity of harm against the conduct's utility.[32] Factors relevant to evaluating the gravity of harm include: (1) the extent of the harm, (2) the character of the harm, (3) the social value of the use, (4) the suitability of the use, and (5) the burden on the harmed party of avoiding the harm.[33] Factors to consider in evaluating utility of the conduct include: (1) the social value of the use, (2) the suitability of the use, and (3) the burden on the harmed party of avoiding the harm.[34] These factors overlap to a large extent with the reasonableness test that applies to riparian rights, which is why in *McCavit I* we instructed the superior court not to reach the private nuisance claim if it determined the dock did not unreasonably interfere with the Lacher's riparian rights.[35]

The superior court's discussion of the Lachers' private nuisance claim is brief. The court found that the extension constituted a private nuisance "because the gravity of the harm caused to the Lachers outweighs the usefulness of the McCavits' dock extension in its present form, considering the applicable factors." And it explained

---

[31] *See Galipeau v. Bixby*, 476 P.3d 1129, 1137 (Alaska 2020).

[32] RESTATEMENT (SECOND) OF TORTS § 826.

[33] *Id.* § 827.

[34] *Id.* § 828.

[35] *McCavit I*, 447 P.3d 726, 736 & n.60 (Alaska 2019).

that "the factors that must be considered to establish a private nuisance overlap completely with the factors that were analyzed to establish the claim of unreasonable interference with riparian rights."

The overlap between the factors also explains why the superior court did not explicitly state that the dock was a "substantial" interference. The court discussed the "extent of the harm" when it found the McCavits' dock interfered with the Lachers' rights as riparian landowners. A finding that their right to reasonable use and enjoyment of the lake was "significantly impaired" supports a separate conclusion that there was substantial interference in the private nuisance context. The court also discussed the "gravity of the harm" resulting from the McCavits' use of the lake in its analysis of the reasonableness factors.

Because the superior court's order as a whole addresses the extent of the harm caused by the interference, the absence of the word "substantial" from its order does not demonstrate clear error.

### D. It Was An Abuse Of Discretion To Award Fees Relating To Litigation Involving DNR.

As the prevailing party, the Lachers were entitled to a partial award of their attorney's fees and costs.[36] They asked the superior court to award them $61,832 in attorney's fees, which they described as approximately 42% of their total fees. Their motion sought all of the $36,201 awarded after the original trial as well as all of their fees on remand, which was $25,631.25. The Lachers argued that they were entitled to enhanced attorney's fees under Civil Rule 82(b)(3) because the McCavits "unnecessarily prolonged and complicated the litigation," and engaged in bad faith conduct.

The superior court granted the Lachers' motion, entering judgment against the McCavits for $61,832 in attorney's fees and $5,397.77 in costs. It found that an

---

[36]    *See* Alaska R. Civ. P. 82(a).

enhanced fee award was justified under Rule 82(b)(3) because the McCavits' defenses added to the complexity of the litigation. It also determined that the litigation with DNR was directly connected to the McCavits' unreasonable dock extension. The court stated that the McCavits' failure to "identify their intentions on remand" caused the proceedings to be more complex than necessary and led to the "parties essentially retr[ying] the case." It also cited the Lachers' attorney's low hourly rate compared to the market rate for comparable work to justify the upward variance. It concluded that "good faith litigants . . . pursuing reasonable positions" would not be deterred by an enhanced fee award.

The McCavits challenge the court's award. They argue first that the superior court erred by determining the Lachers were the prevailing party. They also assert that they should not be responsible for the Lachers' attorney's fees with respect to the litigation against DNR. And they argue that the court abused its discretion by awarding the Lachers 100% of their attorneys' fees on remand.[37]

Civil Rule 82(b)(2) establishes presumptive awards to the prevailing party in litigation.[38] Following a trial at which there was no monetary award, the prevailing

---

[37] The McCavits also object to $708.75 of costs associated with the Lachers' expert witness, arguing that the costs were not limited as required by Alaska Administrative Rule 7(c). But they do not provide adequate support for their claim that the time billed was improperly calculated. Accordingly, this argument is waived. *See Wayson v. Stevenson*, 514 P.3d 1263, 1281 (Alaska 2022) (concluding appellants' claim waived where no support for claim provided).

[38] *See* Alaska R. Civ. P. 82(b)(2).

-14-                                                                7719

party is entitled to 30% of its reasonable and necessary attorney's fees.[39] The superior court may vary the attorney's fee award based on factors in Rule 82(b)(3).[40]

We have defined the prevailing party as "the one who is successful on the main issue of the action and in whose favor the decision or verdict is rendered and the judgment entered."[41] The McCavits' argument that they are the prevailing party assumes that the superior court erred when it determined the dock extension

---

[39] *Id.* ("In cases in which the prevailing party recovers no money judgment, the court shall award the prevailing party in a case which goes to trial 30 percent of the prevailing party's reasonable actual attorney's fees which were necessarily incurred.")

[40] The factors are:

(A) the complexity of the litigation;

(B) the length of trial;

(C) the reasonableness of the attorneys' hourly rates and the number of hours expended;

(D) the reasonableness of the number of attorneys used;

(E) the attorneys' efforts to minimize fees;

(F) the reasonableness of the claims and defenses pursued by each side;

(G) vexatious or bad faith conduct;

(H) the relationship between the amount of work performed and the significance of the matters at stake;

(I) the extent to which a given fee award may be so onerous to the non-prevailing party that it would deter similarly situated litigants from the voluntary use of the courts;

(J) the extent to which the fees incurred by the prevailing party suggest that they had been influenced by considerations apart from the case at bar . . . ; and

(K) other equitable factors deemed relevant.

Alaska R. Civ. P. 82(b)(3).

[41] *Wayson*, 514 P.3d at 1279 (quoting *BP Pipelines (Alaska) Inc. v. State, Dep't of Revenue*, 327 P.3d 185, 191 (Alaska 2014)).

unreasonably interfered with the Lachers' riparian rights and constituted a private nuisance. But the superior court did not err; this argument fails.

The McCavits are correct that they should not be required to pay for the Lachers' fees relating to claims against DNR. The Lachers submitted billing records that relate solely to their claim against DNR between June 2013, when they were ordered to join DNR as a party, and 2016, when DNR was dismissed from the case. Among them were bills from October 2013 for preparing the motion and amended complaint to join DNR, as well as bills for their attorney's correspondence and meetings with DNR's attorneys, preparing discovery requests for DNR, and preparing court filings related to the DNR claim. Other billing records from the same period list costs and time for legal research and client meetings without specifying which claim they related to. The McCavits estimated that "based on the billing descriptions alone, $23,525 of the Lacher fees relate exclusively to their claims against" DNR.

In *Thorstenson v. ARCO Alaska, Inc.*, one plaintiff settled with the defendant and the remaining plaintiff was charged for fees related to the "overlap" between their claims.[42] We reversed and remanded for reapportionment of fees based "on the practical implications of the trial court's ruling."[43] The two plaintiffs had filed a complaint against their former employer, making identical claims, and we noted that there was "an overlap of 50% in the work performed" by the employer's attorneys to defend against each of the two plaintiffs' claims.[44] But we concluded that "[t]o charge the last remaining plaintiff with a grossly disproportionate share of a defendant's attorney fees . . . creates perverse incentives. Each plaintiff should be charged with his proportional share of fees incurred prior to the resolution of his claim."[45] We reasoned

---

[42]  780 P.2d 371, 376 (Alaska 1989).

[43]  *Id.* at 376-77.

[44]  *Id.* at 376 (emphasis omitted).

[45]  *Id*. at 376-77.

that if both plaintiffs had remained in the case for the same amount of time, they would have shared the burden of attorneys' fees equally, making it unfair to burden the remaining plaintiff with a greater proportion of the fees.[46]

By contrast, the Lachers' claims against the McCavits and DNR were distinct from one another. The Lachers' DNR claim was an administrative law claim that centered on DNR's authority as a regulatory body. Litigating this claim required different work from that needed to pursue the Lachers' trespass, nuisance, and riparian rights claims against the McCavits, including research on a separate area of law and preparation of arguments that had no application to the claims against the McCavits. For example, the Lachers submitted billing records that related solely to the DNR claim, including discovery requests to the State and their opposition to DNR's motion for summary judgment.

Fees awarded under Civil Rule 82 "must relate solely to attorneys' services performed in the case in which the judgment is entered."[47] The Lachers argue that they are entitled to attorney's fees related to their claim against DNR because their objective was to require the McCavits to remove or modify the dock extension, rather than to pursue a due process claim against DNR. But the suit against the McCavits arose out of the Lachers' own failed attempts to make DNR enforce regulations against their neighbors. The Lachers' suggestion that the McCavits involved DNR as "a foil" against them misrepresents the sequence of events leading up to their initial complaint.[48]

---

[46] *Id.*

[47] *Torrey v. Hamilton*, 872 P.2d 186, 187 (Alaska 1994); *see also Alaska State Hous. Auth. v. Riley Pleas, Inc.*, 586 P.2d 1244, 1249 (Alaska 1978).

[48] The Lachers also suggest that by "reach[ing] a responsible settlement with DNR," they should be credited for reducing the overall cost of litigation. But the Lachers did not reach any settlement with DNR; DNR won summary judgment on the Lachers' claims. And like DNR, the Lachers stipulated to bear their own costs and fees.

And when the McCavits moved to join DNR as a necessary party, the Lachers did not take the opportunity to oppose the motion.

The superior court also abused its discretion when it enhanced the attorney's fee award. The court found that "the McCavits pursued their claims without adequate regard to cost, or consequences." But that conclusion is not supported by the record. The Lachers argued that the evidentiary hearing on remand was unnecessary and repetitive, but the superior court acknowledged it likely needed additional evidence of economic impact to employ the new reasonableness rule. And both the Lachers and the McCavits introduced new evidence, including expert testimony that the court ultimately relied on. The superior court was applying our new reasonableness test for the first time to a claim involving a non-consumptive use of riparian rights. It was not unreasonable for the McCavits to attempt to reframe their arguments on remand in light of the new law.[49]

Fees related to the Lachers' claim against DNR are not properly assessed against the McCavits and it was manifestly unreasonable to enhance the attorney's fee award in light of the new reasonableness rule. We therefore vacate the award of attorney's fees and remand for recalculation.

## V.    CONCLUSION

We AFFIRM the superior court's determination that the McCavits' dock extension unreasonably interfered with the Lachers' riparian rights and constituted a private nuisance. We VACATE and REMAND the attorney's fees award for reconsideration consistent with this opinion.

---

[49]    *See Riddle v. Lanser*, 421 P.3d 35, 48-49 (Alaska 2018) (reversing attorney's fee enhancement where court erred in characterizing defenses as unreasonable because broad language of relevant statute had not previously been interpreted).